SIXTH DIVISION

August 6, 1999

No. 1-98-1096

MARLA M. BURROWS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

)

HAROLD R. PICK, a/k/a )

Colonel Harold R. Pick, ) The Honorable

) 
Roland C. Riley
,

Defendant-Appellant. ) Judge Presiding.

JUSTICE BUCKLEY delivered the opinion of the court:

This case arises out of a contract between Marla Burrows, plaintiff, and Harold Pick, defendant, for defendant's appraisal and sale of plaintiff's personal property in exchange for a commission of 25% of the sale proceeds.  Plaintiff filed a four-

count amended complaint against defendant alleging breach of contract, conversion of personal property, consumer fraud, and breach of fiduciary duty.  The trial court granted defendant's motion for summary judgment as to counts I through III of the amended complaint but denied summary judgment as to count IV, which alleged breach of fiduciary duty.  The trial court also granted defendant's petition for sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) and, subsequently, granted defendant's fee petition, awarding fees in the amount of $5,000.  Plaintiff appeals and raises two issues:  (1) 

whether the trial court abused its discretion in awarding Rule 137 sanctions; and (2) whether the trial court's award of $5,000 in sanctions under Rule 137 is excessive where the trial court held that a genuine issue of material fact existed on the breach of fiduciary duty count.

In May 1989, plaintiff contracted with defendant to appraise all of her personal property located in her home in Winnetka, Illinois, and, in addition, to conduct a house sale of all of the items in exchange for a commission of 25% of the sale proceeds.  Defendant appraised the property at a value of $174,481.  

Prior to the house sale of the property, plaintiff removed  some of the appraised property, having a value of $71,865, and shipped it to her home in Colorado.  Plaintiff also gave gifts of some of the appraised property, having a value of $4,700.  Thus, there remained $98,609 in property to be sold at the house sale.

Defendant allegedly conducted the sale at plaintiff's  residence in Winnetka on November 10-12, 1989.  After the sale, defendant prepared an appraisal which, according to defendant, represented the unsold property that was to be donated to a recognized charity.  According to defendant, the appraisal of the remaining property totalled $42,037.

According to plaintiff, she and her accountant made repeated demands on defendant for an accounting of the items sold.  Approximately six months after the sale, defendant provided a short summary listing the proceeds of the sale and various expenses incurred.  This document reflected that the house sale garnered $13,168 and, that after subtracting defendant's commission and various expenses, a total of $3,434.09 was due plaintiff.

Plaintiff filed a three-count complaint against defendant on November 14, 1991.  Count I alleged breach of contract and sought an accounting and injunctive relief.  Count II sought damages for bailment and conversion of personal property.  Count III sought damages for violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 501/1 
et seq.
 (West 1992)).  Plaintiff's deposition took place on July 15, 1994.  Defendant was deposed on November 14, 1994, at which time he was on medication.  Defendant's deposition was continued and he was deposed a second time on July 17, 1995.  Thereafter, on October 31, 1995, plaintiff filed an amended complaint restating counts I through III and adding a fourth count for breach of fiduciary duty.  On April 18, 1997, plaintiff provided an evidentiary deposition.

Subsequently, defendant filed a motion for summary judgment and for sanctions pursuant to Rule 137.  The trial court granted summary judgment in favor of defendant as to counts I through III but denied summary judgment as to count IV.  On December 23, 1997, the trial court granted defendant's motion for sanctions.  On February 27, 1998, the trial court awarded defendant $5,000 on his petition for attorney fees.  Plaintiff now appeals.

The first issue for our consideration is whether the trial court abused its discretion in granting defendant's motion for sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) against plaintiff for failure to conduct a  reasonable inquiry.  Rule 137 provides in relevant part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper;  that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  155 Ill. 2d R. 137.  

The purpose of Rule 137 is to "prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law."  
Senese v. Climatemp, Inc.
, 289 Ill. App. 3d 570, 581 (1997).  The purpose is not to punish litigants and their attorneys simply because they have been unsuccessful in the litigation.  
Espevik v. Kaye
, 277 Ill. App. 3d 689, 697 (1996).

The burden on a party seeking sanctions is to show that the opposing party made untrue and false allegations without reasonable cause.  
In re Estate of Wernick
, 127 Ill. 2d 61, 77 (1989).  The trial court must employ an objective standard to determine whether a party made a reasonable inquiry; subjective good faith is insufficient to meet the burden of Rule 137.  
Edwards v. Estate of Harrison
, 235 Ill. App. 3d 213, 221 (1992); 
In re Marriage of Irvine
, 215 Ill. App. 3d 629, 638 (1991).  

When reviewing a circuit court's decision to impose sanctions, the appellate court must determine whether the circuit court's decision was informed, based on valid reasons, and followed logically from the circumstances of the case.  
In re Estate of Smith
, 201 Ill. App. 3d 1005, 1009-10 (1990).  The law is well settled that the appellate court should give considerable deference to the court's decision to impose sanctions and that decision will not be reversed absent an abuse of discretion.  
Yassin v. Certified Grocers of Illinois, Inc.
, 133 Ill. 2d 458, 467 (1990).

Plaintiff argues that sufficient facts and circumstances existed at the time of the filing of the complaint to state a cause of action for breach of contract, conversion, and fraud.  According to plaintiff, the facts known to her at the time she filed the complaint were as follows:  (1) plaintiff hired defendant to appraise property in her home; (2) defendant appraised the property in the amount of $174,000; (3) plaintiff subsequently removed some property having an appraised value of approximately $75,900; (4) plaintiff contracted with defendant to conduct a house sale of the remaining property valued at $98,100; (5) defendant allegedly conducted the house sale; (6) after the house sale defendant did not provide plaintiff with any receipts, records, reports, or statements as to the results of the sale; (7) defendant informed plaintiff that the unsold property had a value of $40,000 and that it was donated to charity; (8) after several months of demands for information, defendant provided plaintiff with a limited two-page statement stating that the sale garnered $13,000; and (9) defendant has not yet provided plaintiff with any documentation, receipts, or funds from the sale.

In response, defendant contends that pleading facts sufficient to support a cause of action is not enough.  Defendant argues that plaintiff must have proof to support the allegations of her complaint otherwise sanctions are appropriate.  Defendant points to the following testimony taken at the discovery deposition of plaintiff on July 15, 1994, in support of his assertion that there is no factual basis for plaintiff's allegations:

"Q.  Well, do you have any knowledge that [defendant] did in fact take any of your personal property or that any member of his organization took any of your personal property?

A.  Not personal knowledge.  But what else could it be?

Q.  Are you just surmising that?

A.  What does surmising mean?

MR. COURI:  Guessing.

A.  Yes, I'm guessing.  Assuming, I think, is probably a better word.

Q.  Can you point to even a single piece of property listed in Exhibit 4 that [defendant] took for his own use or that some other member of his organization took for their own use?

A.  No, I cannot because I am not in Chicago.

Q.  What I'm trying to ask you is if, other than what you refer to earlier as an assumption, do you have any other basis for believing that [defendant] did not make a donation to the National Jewish Hospital?

A.  No.  It's just something that I concluded, I guess, because what else could it be?"

Defendant also points us to the following testimony taken at plaintiff's subsequent evidence deposition on October 31, 1995:

"Q.  Before the house sale took place was it correct that you and [defendant] had mutually selected the National Jewish Center of Immunology and Respiratory as the donee?

A.  Uh-huh.

Q.  Say 'yes.'

A.  Yes.

Q.  And isn't it true that you took a charitable deduction for the items that were donated to the center after the sale?

A.  Yes.

  ***

Q.  Do you have any basis for disputing that the donation to the National Jewish Center actually took place?

A.  I can't answer that.  Say it over.

Q.  You have no facts that the -- to support any claim that the donation to the National Jewish Center for Immunology and Respiratory did not take place; is that correct?

A.  No, because I have no proof that it did take place.

Q.  Although you did receive a receipt from the National Jewish Center Thrift shop; is that correct?

A.  If you mean -- where is it?

Q.  Exhibit 7.  I have it.

A.  If that's what you mean as a receipt, I received this receipt.

Q.  Okay.  Are you aware or can you identify any particular piece of property that was at the home on -- is it Woodley?

A.  Woodley.

Q.  -- at the time of the house sale that was either not sold or not donated to the charity?

A.  No.

Q.  Do you have any knowledge that [defendant] or anybody acting on [defendant's] behalf did anything other than either sell the property at the house sale or donate the leftover property to the charity?

A.  Do I have knowledge of it?

Q.  Yes.

A.  No.

  ***

Q.  Do you believe that [defendant] took any of the property that had been in the house at 66 Woodley for his own personal use or gain?

A.  I can't believe nor disbelieve.

 ***

Q.  Showing you what's been marked as Burrows deposition Exhibit 8, do you have any belief that the house sale conducted by [defendant] produced gross revenues in excess of the amount stated in that document?

A.  I believe it must have.

Q.  Do you have any basis for that belief?

A.  The difference in -- the amount of things that were sent to the thrift store and the amount of things on the appraisal and the amount of the things that I sent off either to myself or to Andy or Peter, the amounts don't jibe.

Q.  Well, do you have anything other than your assumption for believing that the sale conducted by [defendant] in November 1989 produced higher gross sale figures that what have been listed on Exhibit 8?

A.  I have no proof."

The trial court concluded that Rule 137 sanctions were warranted in this case.  The judge stated:

"When the first complaint was filed, we should have had some discovery that would  have led us to believe whether or not the allegations had some support.  That's what discovery does.  I can understand to some extent filing a complaint on information.  And believe to some extent I can understand that because sometimes facts are hard to come by.  Sometimes knowledge that you need to flush this out is contained in the -- is in the possession of the other side.  I have no problem with that theory whatsoever. ***

***

The second complaint was filed perhaps four years [after the first complaint] in October 31, 1995.  The same first counts between 1991 and 1995."

Later, when plaintiff's counsel argued that plaintiff's failure to acquire the necessary information to support counts I through III does not warrant sanctions, the trial court responded:

"You folks had four years to do your dis-

covery, to do whatever you needed to do to put the complaint in proper form so that you had a proper cause of action that one could proceed on.  You had four years to do that.  You turned around and in 1995 filed the first amended complaint that has the same allega-

tions as the original complaint."

Plaintiff's counsel at that point attempted to argue to the trial court the reasons for the four-year time period between the first complaint and the first-amended complaint.  Nevertheless, the trial court found no reasonable inquiry took place during that time, prior to the filing of the first-amended complaint.

In addition to her reasons presented to the trial court for the four-year gap in the filing of the two complaints, plaintiff also asserts that she had trouble serving defendant and he was not served until May 1, 1992.  Plaintiff also points out that defendant's counsel fell ill and eventually died and that defendant's current attorney did not enter the case until January 20, 1994.  Furthermore, she asserts that defendant was not available for deposition until November 14, 1994, at which time he was on medication and unable to answer a number of questions.  Defendant's deposition was continued until July 17, 1995, and, thereafter, on October 31, 1995, plaintiff filed her amended complaint.

We find that the trial court abused its discretion in awarding sanctions in this case.  To determine whether a particular inquiry by an attorney or party who has signed a pleading was reasonable, we must look to the facts and circumstances that existed at the time the pleading was filed
.  
Lewy v. Koeckritz International, Inc.
, 211 Ill. App. 3d 330, 334 (1991).  In the case at bar, from the time that the first complaint was filed to the time that the second complaint was filed, plaintiff knew the following:  that she had authorized defendant to sell approximately $98,000 worth of her personal property and that she had failed to receive any money from the sale, any receipts from the sale, or any type of records indicating what transpired at the sale, other than a short, two-

page statement.  The two-page statement informed plaintiff that the sale garnered $13,000 of which, according to defendant, plaintiff was entitled to approximately $3,400.  Subtracting the $40,000 worth of property donated to charity leaves plaintiff with property appraised by defendant at $58,000 which allegedly sold for $13,000 without one cent being paid to plaintiff.

Although plaintiff may not have had concrete proof of wrongdoing on the part of defendant at the time of the filing of either complaint, the facts and circumstances known to her were such that one could reasonably assume that further investigation would uncover supporting proof.  Indeed, although the trial court granted defendant summary judgment on counts I through III, the trial court did determine that plaintiff has alleged a valid count for breach of fiduciary duty; thus, her lawsuit is not devoid of merit.  Based on the facts and circumstances available to plaintiff at the time of the filing of both complaints, it was objectively reasonable to believe that the course of discovery would provide information leading to a success on the merits.

Moreover, to be entitled to sanctions, defendant has the burden of proving not only that the allegations of the complaint were made without reasonable inquiry, but also that the allegations of the complaint are untrue.  
In re Estate of Wernick
, 127 Ill. 2d at 77.  Plaintiff's statements at her deposition, relied on by defendant, are not sufficient evidence that the allegations of counts I through III of the complaint are untrue.  Her statements merely indicate that as of the time of her depositions she still had no knowledge as to what transpired at the house sale and had not been provided with any information from defendant.  Likewise, the grant of summary judgment in defendant's favor is not a determination that the allegations were untrue.  Rather, it is a determination that there is no genuine issue of material fact as to those counts.  As we recognized above, the purpose of Rule 137 is not to punish litigants or their attorneys for being unsuccessful in the litigation; it is to punish a party who files a pleading for an improper purpose such as harassment, delay, or needless expense to the other party.  
Duignan v. Lincoln Towers Insurance Agency, Inc.
, 282 Ill. App. 3d 262, 271 (1996).  We hold that it was unreasonable to conclude that this is a case that warrants sanctions.

Because we are reversing the trial court's order granting sanctions in favor of defendant, we need not reach the issue of the propriety of the $5,000 award for attorney fees.  

CONCLUSION

For the foregoing reasons, we hereby reverse the Cook County circuit court's order of December 23, 1997, granting defendant's motion for sanctions and the order of February 27, 1998, awarding sanctions in the amount of $5,000.

Reversed.

Zwick
 and 
Quinn
, JJ., concur.