2021 IL App (2d) 200369-U
No. 2-20-0369
Order filed April 19, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOSEPH LUCANIA, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-L-47 |
| | ) | |
| BRUCE LUCANIA, | ) | Honorable |
| | ) | James R. Murphy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: In breach-of-contract action, the trial court properly: (1) struck defendant's loan-repayment affirmative defense; (2) denied his motion to vacate the judgment in his plaintiff brother's favor; and (2) denied defendant's request for sanctions. Affirmed.

¶ 2    Plaintiff, Joseph Lucania, sued his brother, Bruce Lucania, for breach of contract, seeking repayment of a $150,000 loan. The trial court struck Bruce's repayment affirmative defense. Following a bench trial, the trial court entered judgment in Joseph's favor and against Bruce for $150,000, plus $33,750 in interest. Bruce moved to vacate and for sanctions, asserting that alleged newly discovered evidence in their deceased sister's estate litigation showed that Joseph had

perjured himself concerning the source of funds for the loan, specifically, that Joseph had used funds stolen from the estate, thereby, depriving Bruce of his inheritance expectancy and asserting that this gain to Joseph constituted the loan repayment. The trial court denied the motions. Bruce appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In his complaint, filed on January 29, 2019, Joseph, age 76, alleged that, on June 30, 2014, he entered into an oral agreement to loan Bruce $150,000. He asserted that Bruce agreed to repay him, within two years, the loan amount, plus 8% interest per year. Joseph alleged that Bruce had breached their agreement by failing to repay the loan.

¶ 5      As an affirmative defense, Bruce raised repayment, alleging that Joseph had misappropriated their deceased sister, Virginia Lucania's, assets and that the portion of such assets that Bruce would have inherited exceeded the $150,000 that Joseph claimed he was owed. Thus, Joseph, via his fraudulent conduct and possession of misappropriated assets, had been fully repaid. Virginia passed away on December 1, 2017. Bruce referenced case No. 18-L-264, a complaint he filed for tortious interference with inheritance expectancy, seeking to contest the validity of Virginia's 2012 will (which apparently named Joseph as sole beneficiary of her estate and named him as executor) based on allegations that Joseph facilitated fraudulent *inter vivos* conveyances that deprived Bruce of his inheritance.[1] Bruce did not attach the complaint to his affirmative defense.

_____

[1] Bruce asserted that, on April 4, 2019, the trial judge in the estate litigation granted the public administrator's petition for letters of administration and admitted the 2012 will to probate. In her petition for issuance of a citation to discover assets in case Nos. 18-L-264 and 18-P-639,

¶ 6     On March 26, 2019, Joseph moved to strike the affirmative defense (735 ILCS 5/2-615 (West 2018)), asserting that Bruce's allegations that he might prevail in separate litigation were speculative and did not constitute an affirmative defense.

¶ 7     On July 17, 2019, Bruce moved to stay the proceeding until resolution of his tortious-interference case and a will contest (case No. 18-P-639) he had filed on May 7, 2019, alleging Virginia lacked the mental capacity to execute a 2012 will that left her entire estate to Joseph and that Joseph exerted undue influence over her and procured execution of the will. The cases had been consolidated, he asserted, on June 13, 2019. Bruce asserted that resolution of the consolidated cases would determine the validity of his repayment affirmative defense in the present matter.

¶ 8     On September 19, 2019, the trial court granted Joseph's motion to strike and denied Bruce's motion to stay the proceedings.

¶ 9                              A. Trial

¶ 10                         1. Joseph's Testimony

¶ 11    Trial commenced on March 2, 2020. Joseph testified that, in June 2014, he loaned Bruce $150,000 in the form of cashier's checks (Nos. 429650133 and 429650136). The checks were debited from his account, and Bruce received the money. The brothers met in St. Charles in June 2014, and Joseph gave Bruce the checks. According to Joseph, Bruce stated that he would take about one year to repay him. He was rehabilitating a house and, after he sold it, he would pay back Joseph his $150,000.

---

which Bruce attached to his motion to vacate in this case, the public administrator alleged that, upon information and belief, Joseph became Virginia's *de facto* fiduciary in 2011.

¶ 12      About one year later, in 2015, when the rehabilitation work was nearly finished, Joseph asked Bruce to repay him.  It was summer, and they were at the house.  Bruce replied that he was going to put the house on the market.  He did not sell the house, but moved in for some time.

¶ 13      About six months later, at the house, Joseph again asked Bruce when he was going to repay him.  According to Joseph, Bruce stated that he could not sell the house.  He did not inform Joseph that he had transferred ownership to his daughter.  Joseph did not know if the house was ever sold.

¶ 14      Several months later, Joseph asked Bruce for repayment.  Bruce replied that he still had no buyer for the house.  This was their final communication.  According to Joseph, Bruce never repaid him.

¶ 15      Joseph agreed that he signed a discovery response with respect to checks that he identified that he gave Bruce.  In interrogatories, he answered that the sources of the loan funds were his personal funds, which were held at US Bank.

¶ 16      Joseph further testified that his understanding was that the money would be repaid after the home was sold and that he would get his money back with interest.  He further understood from Bruce that the process, including repayment, would take two years.

¶ 17      Joseph stated that, in 2017, he probably demanded repayment, and Bruce's answer was that the house was not yet sold.  He did not believe that he demanded repayment in 2018, because, at that point, "communication was sort of falling apart."

¶ 18      Joseph did not recall whether the parties agreed that he would receive a percentage of the profit over his $150,000 investment.  "I was to be paid back the amount of money with a substantial gain.  That's how it was presented to me."  Later, he testified that he could not recall if he was to be paid back the $150,000 and a portion of the gain on the sale of the house.

¶ 19                                    2. Bruce's Testimony

¶ 20    Bruce testified as an adverse witness during Joseph's case-in-chief.  Bruce agreed that Joseph lent him $150,000 in 2014.  At the time, Bruce was going to rehabilitate a house in St. Charles.  Afterwards, he was going to try to sell the house to a third party.

¶ 21    On October 3, 2014, Bruce purchased the house (at 6 North 210 Knollwood Drive).  After it was rehabbed, in about July 2015, he moved into the property and lived there for about four to six weeks.

¶ 22    On August 24, 2015, Bruce quitclaimed his interest in the house to his daughter, Tanya Lucania.  On September 25, 2015, Tanya mortgaged the property for $250,000 and made payments to Bruce.  Bruce did not know if Tanya transferred the property to Autumn Sun LLC.  In 2018, Pablo Perez purchased the property from Tanya.

¶ 23    During his case-in-chief, Bruce testified that he had self-employed, "flipping" homes for 20 years.  In June or July 2014, Joseph provided him with a $150,000 investment to rehabilitate a house.  Prior to this, during their initial discussion on the telephone, the parties discussed the terms, and Bruce did not want Joseph to be a partner, because he never had a partner in the past and intended to purchase the house with cash.  However, he agreed to "take [Joseph] because he is my brother."  According to Bruce, Joseph was to be repaid after the house was sold and taxes, attorney fees, etc., were paid.  Joseph would receive 30% of what remained.

¶ 24    When, in June or July 2014, Joseph came to the house and gave Bruce the checks, there were no additional conversations about the terms of the investment.  "So I took it he agreed to it because he came and brought me the money."  According to Bruce, there was no conversation about an interest rate or interest payment on the $150,000.  Bruce testified that he accepted the $150,000 and used the money to rehabilitate the house.  He did not use any of the funds toward the purchase price of the house; he paid cash for it.

¶ 25    Bruce conceded that he never repaid the $150,000 to Joseph.   Further, Joseph never demanded the money back.  Bruce testified that he never repaid any percentage of the profit on the sale of the house, because there was not much money to split up and because, after Virginia passed away, in December 2017, the brothers had a conversation and went into a "different direction" concerning another property.

¶ 26    Bruce testified on cross-examination that he produced no documents in discovery concerning the sale of the house, because he was not asked for them.  In 2015, he sold the house to Tanya and received $250,000 from her for the property.

¶ 27                                B. Judgment

¶ 28    On the same day, the trial court entered judgment in Joseph's favor, awarding him $150,000, plus $33,750 in simple interest and costs of suit.  It found that there was a valid contract, a breach, and damages that should have been paid upon the sale of the house to Tanya on August 24, 2015.  "And that is the time when the parties should have settled up that investment or loan." The court determined that, given Joseph's lack of recollection as to the interest term, the credible testimony about what was payable over $150,000 was Bruce's testimony concerning 30%. However, "[t]here is no proof of what that is.  And [Joseph] did agree to some extent with that 30[%] or with the portion of—a good substantial portion of the profits is what he said."  The court reiterated that there was no proof of this, but that the Interest Act (815 ILCS 205/0.01 *et seq.* (West 2018)) allowed 5% interest when there was no agreement.  Accordingly, the court awarded 4½ years at 5% interest from August 24, 2015, to March 2, 2020, or $33,750.

¶ 29                    C. Motion to Vacate and For Sanctions

¶ 30    Bruce moved to vacate the judgment (735 ILCS 5/2-1203 (West 2018)) and sought sanctions (Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)).  He argued that newly discovered evidence showed

that the $50,000 cashier's check that Joseph testified came from his own funds was actually directly drawn from Virginia's checking account while Joseph acted as a fiduciary under a power of attorney for property. As to the remaining $100,000, Bruce argued that, while not directly drawn from Virginia's accounts, it should be attributed to her because evidence in the pending estate litigation showed that, prior to the date that Joseph gave the monies to Bruce, he had already pilfered hundreds of thousands of dollars from Virginia's accounts. Bruce asserted that Joseph's lies constituted a fraud on the court and warranted imposition of sanctions. Joseph's perjured testimony and false pleadings, according to Bruce, were intended to, and did, procure the judgment in this case, which must be vacated and the suit dismissed with prejudice. He also sought attorney fees and costs.

¶ 31 Specifically, Bruce asserted that, in response to a subpoena issued in the estate litigation, US Bank produced evidence—a counter-withdrawal slip—showing that Joseph withdrew $50,000 from Virginia's account with that institution (account number ending in 4024) and used the funds to purchase the cashier's check he averred represented funds he lent to Bruce. (Bruce attached a copy of the counter withdrawal document, dated June 30, 2014, and the cashier's check No. 4296500136, also dated June 30, 2014, from an account number ending in 0062.) Viewed in its most positive light, he argued, this transaction could have constituted a loan from Virginia, but, in no way could it be viewed as coming from Joseph's personal funds. Bruce also referenced his motion for sanctions, filed in the estate litigation, wherein he challenged Joseph's claims that Virginia's estate had no assets. He noted that the court in that case had ordered Joseph to provide an accounting and had reserved ruling on Bruce's motion. Next, Bruce referenced a citation petition filed by the public administrator in the estate litigation, which alleged that Joseph began self-dealing with Virginia's assets in 2012 (shortly after she was admitted to a nursing home due

to her dementia). (He attached a copy of the citation petition.) The citation petition, according to Bruce, showed that, by the time Joseph lent Bruce the money that represented the $100,000 cashier's check, Joseph had already transferred to himself hundreds of thousands of dollars from Virginia's accounts. As he was a fiduciary at the time of his self-dealing, "it should be presumed that the $100,000 casher's check originated from monies which [Joseph] had wrongfully obtained from his disabled sister." Bruce contended that Joseph's actions concerning the $50,000 nullified his standing to seek repayment and invalidated the judgment he fraudulently obtained in this case.

¶ 32     On June 16, 2020, the trial court denied Bruce's motion to vacate and his request for sanctions, finding that the source of the funds Joseph loaned Bruce was not a material issue at trial, "nor was there an attempt to make it an issue. Further, there was no attempt by Bruce to cross-examine or impeach Joseph on the issue of the source of funds." The court also determined that bank documents were available to Bruce prior to trial, as the documents were printed on July 18, 2018, and Joseph filed his complaint on January 29, 2019. Addressing Bruce's argument that Joseph did not have standing to bring suit in this case, the trial court found that it was *Bruce's* standing that was more problematic, in that he was asserting claims that were properly the public administrator's claims in Virginia's probate case. It noted that Bruce had attached to his motion a copy of a petition for a citation to recover assets filed by the public administrator in the estate litigation "that makes claims against Joseph for misappropriation from" Virginia's estate. The court found that the "estate issues were not part of this case." Neither after his affirmative defense of repayment was stricken, nor during trial, did Bruce attempt to raise the issue of the source of the funds. Bruce appeals.

¶ 33                                    II. ANALYSIS

¶ 34    Bruce challenges the trial court's rulings on Joseph's motion to strike, Bruce's motion to vacate, and his motion for sanctions. For the following reasons, we reject Bruce's arguments.

¶ 35    Preliminarily, we address Joseph's assertion that Bruce's statement of facts is argumentative, one-sided, and comprised of irrelevant commentary included for the purpose of hindering our view. He offers his own statement of facts and asks that we strike Bruce's statement of facts or ignore any improper matter. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (appellate briefs shall include "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal.") We decline Joseph's request to strike Bruce's statement of facts and, instead, will not consider any improper statements.

¶ 36                        C. Motion to Strike Repayment Affirmative Defense

¶ 37    Turning to the merits, Bruce argues that the trial court erred in striking his repayment affirmative defense, where, he asserts, it prematurely intervened and usurped a factual question from the trier of fact: namely, whether Bruce could provide sufficient evidence to satisfy his burden of proving his affirmative defense that Joseph, based on his theft of millions of dollars of Bruce's inheritance from Virginia's estate, had already been repaid many times over. He asks that we vacate the judgment in Joseph's favor. For the following reasons, we reject Bruce's argument.

¶ 38    An affirmative defense is one in which the defendant gives color to his or her opponent's claim but asserts new matter that defeats an apparent right in the plaintiff. *Federated Equipment & Supply Co. v. Miro Mold & Duplicating Corp.*, 166 Ill. App. 3d 670, 675 (1988). A motion to strike an affirmative defense admits all well-pleaded facts constituting the defense (*Vermeil v. Jefferson Trust & Savings Bank*, 176 Ill. App. 3d 556, 562 (1988)), together with all reasonable inferences that may be drawn therefrom (*Farmer City State Bank v. Guingrich*, 139 Ill. App. 3d

416, 422 (1985)), and raises only a question of law as to the sufficiency of the pleading (*Vermeil*, 176 Ill. App. 3d at 566). Where the well-pleaded facts and inferences drawn therefrom raise a possibility that the party asserting the defense will prevail, striking of the affirmative defense is improper. *Guingrich*, 139 Ill. App. 3d at 422. We review *de novo* the trial court's striking of an affirmative defense. *Hartmann Realtors*, 2014 IL App (5th) 130543, ¶ 20.

¶ 39    "Payment is an affirmative defense, and if [the] defendant desire[s] to assert such defense, he [or she] [is] required to plainly set forth such facts in his [or her] pleadings in order that [the] plaintiff might not be taken by surprise at the trial." *Economy Truck Sales & Service, Inc. v. Granger*, 61 Ill. App. 2d 111, 116 (1965).

¶ 40    In his affirmative defense, Bruce alleged that Joseph had misappropriated Virginia's assets and that the portion of such assets that Bruce would have inherited exceeded the $150,000 that Joseph claimed he was owed. Thus, Joseph, via his fraudulent conduct and possession of misappropriated assets, had been fully repaid. Bruce referenced his tortious-interference case, where he sought to contest the validity of Virginia's 2012 will. However, he did not attach to his affirmative defense filing a copy of that pleading. Joseph, in turn, moved to strike, arguing that Bruce's allegations were speculative and that Bruce did not allege facts that defeated or avoided the legal effect of his breach-of-contract claim. The trial court granted Joseph's motion. There is no report of proceedings or bystander's report (Ill. S. Ct. R. 323(c) (eff. June 1, 2017)) from the hearing on the motion.

¶ 41    Here, Bruce maintains that he pleaded facts that, if proven, would have avoided the legal effect of Joseph's breach-of-contract claim. His affirmative defense, he argues, was proper and should not have been stricken. He contends that the question whether Joseph tortiously interfered with his inheritance expectancy in an amount greater than $150,000 is directly relevant to whether

Joseph had been repaid. Had he been afforded the opportunity at trial to prove that he had repaid Joseph with funds from his converted inheritance, Bruce asserts, he would have satisfied his repayment affirmative defense. Bruce also points to the trial, where Joseph testified about his purported efforts to seek repayment. In response, Bruce sought to question him regarding joint property owned by Virginia and Joseph. Joseph objected based on relevance, and Bruce responded that the line of questioning was relevant to the breach and repayment issues. He notes that the trial court sustained the objection and refused to allow him to present evidence of repayment. Bruce argues that he was prejudiced by Joseph's ability to present evidence regarding lack of repayment and his inability to refute that evidence.

¶ 42    Joseph responds that the affirmative defense was properly stricken. He contends that the possibility of Bruce inheriting from a third party's estate is irrelevant to whether Bruce breached an oral contract for the repayment of a $150,000 loan. Alleging that there is a possibility that Joseph may at some unknown point in the future owe Bruce an unknown amount of money, he contends, does not constitute an affirmative defense. In Joseph's view, Bruce's theory of repayment was a plain admission that he deliberately chose to not pay back any of the $150,000 he admitted his brother had loaned him.

¶ 43    Further, Joseph contends that Bruce's affirmative defense allegations were conclusory and his defense was devoid of factual allegations sufficient to support the conclusions he makes. He notes that Bruce opted to reference a separate unrelated lawsuit and gloss over the fact that the separate litigation is still in pretrial status and that Joseph is vehemently contesting it. Finally, Joseph notes that there is no report of proceedings or bystander's report from the hearing on the motion to strike. The record contains only Bruce's affirmative defense and Joseph's motion. Thus,

he contends, we must indulge every reasonable presumption favorable to the trial court's judgment and resolve against Bruce any doubts that arise from the incompleteness of the record.

¶ 44    In reply, Bruce argues that Joseph did not argue below that Bruce's allegations were conclusory and, therefore, he has forfeited such argument.  Pointing to his response to Joseph's motion to strike, he also argues that the common-law record is sufficient such that Joseph is not entitled to any reasonable presumptions favorable to the judgment.

¶ 45    We reject Bruce's claim.  Nothing in the record shows the basis for the trial court's ruling in Joseph's favor on his motion to strike.  "The burden rests on the appellant to provide a sufficient record to support a claim of error, and in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis." *Landau & Associates, P.C. v. Kennedy*, 262 Ill. App. 3d 89, 92 (1994). Again, there is no report of proceedings or bystander's report from the hearing on the motion to strike.  As Bruce has not provided a record showing that the trial court erred, we must affirm the trial court's ruling.  *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 46    Even ignoring the assumption that the trial court's ruling was proper, we agree with Joseph that Bruce's defense was not properly pleaded.  The allegations, we believe, were conclusory.  The affirmative defense consisted of three allegations: (1) that Joseph's complaint alleged that Bruce had not repaid the $150,000; (2) as set forth in Bruce's tortious interference complaint (which he referenced by case number and did not attach to his defense), Joseph misappropriated Virginia's assets that Bruce ultimately would have inherited absent Joseph's misconduct (and that they exceeded $150,000); and (3) by way of his fraudulent conduct and possession of misappropriated assets belonging to Bruce, Joseph had been fully repaid any amounts he allegedly owes.  The misappropriation allegation is highly problematic.  The complaint Bruce filed in the still-pending

estate litigation was not attached to the affirmative defense and, thus, standing alone, the misappropriation allegation is conclusory and does not constitute a well-pleaded fact. See 735 ILCS 5/2-613(d) (West 2018) (the facts constituting any affirmative defense must be plainly set forth in the answer or reply); *In re Estate of Wrage*, 194 Ill. App. 3d 117, 122 (1990) (respondent's affirmative defenses failed to provide any factual basis for her position and were, therefore, inadequately pleaded). We also reject Bruce's argument that his response to Joseph's motion to strike helped to form a sufficient common-law record from which we can assess the issue. That filing also merely references his tortious-interference complaint, without specifying the allegations therein, and Bruce did not attach a copy of the complaint to his response. Finally, we reject Bruce's argument that Joseph forfeited the argument that the affirmative defense allegations were conclusory. In his motion to strike, Joseph argued that Bruce did not allege facts that defeated or avoided the legal effect of the breach-of-contract action. This is sufficient, and, even if not, Joseph may have raised the specific argument at the hearing, of which we have no record.

¶ 47   In summary, the trial court did not err in striking Bruce's affirmative defense.

¶ 48                           B. Motion to Vacate

¶ 49   Bruce argues next that the trial court erred in denying his motion to vacate. He urges that the proper focus should have been whether the judgment was void as a matter of law due to Joseph's perjury and fraud. Bruce requests that we not view this case in a vacuum, as the real dispute has nothing to do with a $150,000 loan; rather, the case is premised on fraudulent pleadings and prosecuted by discovery violations and perjured testimony. Bruce asserts that Joseph concealed his theft of over $2 million from Virginia while he acted as her power of attorney and, in order to pressure Bruce in the probate litigation to capitulate, Joseph employed a comprehensive litigation strategy that included the filing of the present loan litigation despite the fact that he did

not personally fund the loan. Bruce also contends that Joseph filed the present suit knowing that he had no standing to collect on a debt owed to Virginia's estate and compounded this fraud by violating his duty to tell the truth in discovery responses and in his trial testimony. Joseph's lies regarding the source of the funds, he argues, were material to the issues tried and central to the litigation as a whole.

¶ 50     Bruce further asserts that the trial court's findings concerning newly discovered evidence were erroneous. He contends that the evidence was inadvertently obtained in the estate litigation and that he utilized all discovery tools in this case to uncover the source of the loan funds. His efforts, he urges, can only be considered reasonable.

¶ 51     Section 2-1203 of the Code provides that "[i]n all cases tried without a jury, any party may, within 30 days after the entry of the judgment ***, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203(a) (West 2018). The purpose of a section 2-1203 motion is to alert the trial court "to newly discovered evidence not available at the time of the first hearing, changes in the law, or error in the court's application of previously existing law." *Nissan Motor Acceptance Corp. v. Abbas Holding I, Inc.*, 2012 IL App (1st) 111296, ¶ 16. "When a movant seeks reconsideration based on newly discovered evidence, a party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable." (Internal quotation marks omitted.) *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 324 (2010). Trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006). The issue whether substantial justice is being achieved by vacating a judgment or order is not subject to precise definition, but relevant considerations include

diligence or the lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur. *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 377 (2001).

¶ 52    We review the trial court's decision for an abuse of discretion. *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 26.  A court abuses its discretion where no reasonable person would take the position adopted by the court. *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12.  Bruce claims that, where the trial court misapplies the law, appellate review is *de novo*.  We disagree that such a rule applies here, as there is no evidence that the trial court misconstrued the standard for newly discovered evidence or any other applicable law.

¶ 53    Bruce takes issue with the trial court's finding that evidence concerning Joseph's alleged conversion of $50,000 was not newly discovered evidence, because it had been produced in the probate litigation prior to trial in the present case.  Bruce notes that he met his burden of due diligence in this case by propounding interrogatories that requested that Joseph disclose the source of the loan.  However, in his view, Joseph concealed the information and failed to disclose that Virginia funded part of the loan.  He also actively misrepresented the true source by affirmatively stating that he personally funded the loan.  Bruce also contends that Joseph failed to produce the US Bank counter-withdrawal slip that would have revealed that the $50,000 cashier's check had been drawn on Virginia's account.  By concealing this information, he argues, Joseph perpetrated a fraud on the court.

¶ 54    Bruce also argues that his motion was based on Joseph's repeated perjury, not only on evidence procured in the probate litigation.  In this sense, he reasons, the judgment was void as a matter of law.  Bruce asserts that Joseph perjured himself in identifying in discovery the source of the funds as his personal funds and signed an affidavit of compliance in which he affirmatively

stated the information contained in his answers was true and correct. He contends that the source of the loan was central to this suit and claims that Joseph verified in his complaint (which was admitted at trial) that he had fully performed the terms of the parties' oral agreement by loaning Bruce the monies from his personal funds. Also, Bruce notes that he attempted to raise the issue of the source of funds by requesting in discovery that Joseph identify the source. Thus, he asserts that he was not required to cross-examine Joseph regarding the source of the funds when Joseph had already verified that he personally funded the loan.

¶ 55    Joseph responds that Bruce received the loan and never repaid it. He asserts that, if the source of the funds he loaned were material to the issues tried in this case, Bruce would have cross-examined him on that issue. However, no such cross-examination took place. Also, Bruce could have brought a motion under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)) seeking involuntary dismissal based on certain defect or defenses or sought summary judgment. However, he filed no such motion. Joseph also argues that Bruce never showed that his testimony was falsely given willfully or purposefully. He also asserts that Bruce cannot claim the judgment was procured by fraud when Bruce admitted that Joseph loaned him $150,000 and then refused to repay him. The result, Joseph contends, was based on Bruce's admissions contained in the verified pleadings and his trial testimony.

¶ 56    Joseph also takes issue with Bruce's characterization of the US Bank documents as newly discovered evidence. He notes that they were in Bruce's possession on July 26, 2018, pursuant to a subpoena response the bank furnished to Bruce's counsel six months before Joseph filed his complaint in this case.

¶ 57    Bruce replies that Joseph's contention that the source of the funds would not have affected the outcome of the trial because Bruce did not raise the issue is circular. Bruce asserts that Joseph's

discovery responses were designed to mislead Bruce and the court so that no inquiry occurred. He also takes issue with Joseph's argument that the counter-withdrawal slip was not newly discovered evidence. Bruce maintains that Joseph lied during discovery to hide the fact that he had stolen Virginia's money to fund at least part of the loan to Bruce. As to the counter-withdrawal slip, he contends that both parties' counsel received the bank documents at the same time. Bruce had no reason to know that Joseph was lying about the source of funds. Bruce further asserts that Joseph's counsel is no less responsible than Joseph for failing to check the bank records and independently verifying Joseph's records.

¶ 58    We conclude that Bruce's argument fails because the US Bank documents produced in the estate litigation were available in 2018, *i.e.*, prior to the 2019 filing of Joseph's complaint in this case and Bruce, who does not dispute he possessed the documents in 2018, offers no explanation why he did not produce them earlier in this case or why he did not raise this issue during trial. See *Mann*, 324 Ill. App. 3d at 377 (relevant considerations in determining whether substantial justice is being achieved by vacatur include diligence or the lack thereof). Although the trial court struck his affirmative defense, Bruce did not attempt, during trial, to cross-examine Joseph on the source of the loan funds, nor did he attempt to introduce the US Bank documents into evidence or attempt to make an offer of proof on the matter. His argument on appeal that he could not cross-examine Joseph after Joseph testified that the source of the loan monies was his personal funds, thus, rings hollow.

¶ 59    Aside from his failure to raise during trial the issue of the source of funds, Bruce has not offered any explanation as to why the documents were unavailable to him at the time of trial. In this respect, he fails to show that the documents were newly discovered evidence. Again, he does not dispute that he possessed the documents at the same time Joseph's counsel received them in

the estate litigation. Rather, Bruce argues that he was *misled* by Joseph's discovery submittals. We reject this argument. Bruce asks this court to look at the face of the US Bank documents to read evidence of fraud on Joseph's part, but claims that, when *he* received them in 2018, they were somehow misleading and did *not* reflect that Joseph was allegedly hiding that he was using Virginia's money to fund the loan to his brother. We decline to do make such findings.

¶ 60    As to the documents themselves, the cashier's checks with which Joseph paid Bruce were check Nos. 429650133 and 429650136. The June 30, 2014, US Bank counter-withdrawal slip upon which Bruce relies shows that Joseph withdrew $50,000 from Virginia's account with that institution (account number ending in 4024). On the same date, Joseph purchased cashier's check No. 429650136. The check was for $50,000 and was drawn on Joseph's account ending in number 0062. Bruce claims this evidence "conclusively" shows that Joseph "stole" $50,000 from Virginia's account. We reject this claim. The cashier's check for the loan was drawn on Joseph's account, not Virginia's, therefore, the evidence did not show that Joseph "conclusively" stole it from Virginia. Admittedly, however, another reasonable inference is that he deposited the monies he withdrew from Virginia's account into his own (as the amounts were identical) and then purchased the cashier's check he subsequently gave to Bruce. Even assuming that occurred, this does not show that Joseph stole funds from his sister. There is no evidence, for example, that he was not authorized to withdraw the money from her account. During trial, Bruce failed to show, or even attempt to show, that Joseph offered perjured testimony. Thus, his claim fails on this basis. See *Davis v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 4 Ill. App. 3d 221, 225 (1972) (where section 2-1401 petition seeks relief based upon alleged perjured testimony, it must be shown by clear, convincing, and satisfactory evidence that testimony was not only false, but that it was willfully and purposely falsely given; party seeking vacatur must

also show that it was material to issue tried, not merely cumulative, and that it probably would have controlled the result). Finally, we emphasize that there has been *no* adjudication concerning Bruce's fraud claims in the estate litigation. Simply put, the possible recapture of funds from Virginia's estate does not constitute a repayment of funds owed under the contract.

¶ 61    In summary, the trial court did not err in denying Bruce's motion to vacate.

¶ 62                                C. Motion for Sanctions

¶ 63    Next, Bruce argues that the trial court erred in declining to sanction Joseph under Rule 137. We disagree.

¶ 64    The purpose of Rule 137 is to prevent parties from abusing the judicial process by imposing sanctions on litigants who file vexatious and harassing actions based upon unsupported allegations of fact or law. *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050 (1999). The party seeking the imposition of sanctions must demonstrate that the opposing litigant made untrue and false allegations without reasonable cause. *Id.* at 1050-51. Rule 137 is strictly construed, because it is penal in nature. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). Using an objective standard, the trial court must determine whether a party made a reasonable inquiry into the facts and law supporting his or her allegations. *Burrows*, 306 Ill. App. 3d at 1051. We review for an abuse of discretion a trial court's decision whether to impose sanctions under Rule 137. *Dowd & Dowd*, 181 Ill. 2d at 487.

¶ 65    Bruce argues that Joseph fraudulently initiated the present litigation and used it to leverage his position in the probate litigation. This conduct, he asserts, is reprehensible and an example of Joseph's abuse of the judicial process. Bruce contends that the public administrator asserted in the probate litigation that Joseph has systematically engaged in a scheme to pilfer Virginia's estate and to defraud Bruce of his inheritance. Bruce also asserts that Joseph has repeatedly delayed the

probate litigation by swearing under oath that there were no assets in Virginia's estate. He posits that, were it not for the fortuitous discovery of the counter-withdrawal slip, the judgment would have been a *fait accompli* and the trial court would never have learned of Joseph's deceitful attempt to delegitimize the judicial process in furtherance of his scheme to rob Virginia and defraud Bruce. Bruce asks that we reverse the denial of his motion to vacate, enter sanctions against Joseph for his repeated abuse of process, and remand the cause to the trial court for a hearing on attorney fees incurred by Bruce to be imposed as sanctions.

¶ 66    Joseph responds that Bruce's claim is baseless, as he fails to specify what Joseph's lies and perjury were, he focuses on unsubstantiated allegations, and his argument is otherwise unclear. The unrelated probate case, according to Joseph, is a separate case over which the trial court in this case did not preside. Joseph also contends that the deficiencies in Bruce's argument violate Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) for failure to provide this court with a coherent argument supported by citations to the record and citations to relevant authority and, thus, it is forfeited.

¶ 67    Forfeiture aside, Joseph argues that Bruce's assertion that the source of funds was a central issue at trial in this case is erroneous, because nowhere in the complaint did Joseph allege any facts relating to the source of the money he lent his brother. Joseph notes that, during trial, Bruce's counsel did not cross-examine Joseph about the source of the loan and no exhibits were used or offered. Nor was there any attempted impeachment or offer of proof. This was not, Joseph contends, lost on the trial court, which found that the source of the funds was not a material issue at trial and that there was no attempt to make it so.

¶ 68    We conclude that the trial court did not abuse its discretion in denying Bruce's request that it impose sanctions. Bruce points to the following alleged evidence of Joseph's fraud and perjury:

(1) Joseph's statement, in his answer to Bruce's interrogatories, that the source of the loan was his personal funds; (2) Joseph's signed affidavit of compliance, where he stated that the information in his answers was truthful and correct; (3) Joseph's admission at trial that he signed the affidavit and his failure to produce the counter withdrawal slip (which, Bruce asserts, would have revealed that the $50,000 cashier's check was drawn from Virginia's account); and (4) Joseph's trial testimony that he loaned Bruce $150,000 and that the monies were from two cashier's checks from his personal funds. As we discussed above in our analysis of the ruling on the motion to vacate, aside from the fact that Bruce's allegations have not been adjudicated in the estate litigation, Bruce did not, as the trial court reasonably found, raise them at trial. He did not cross-examine Joseph on the issue and did not make an offer of proof. Thus, Bruce has failed to show that Joseph made false allegations. Finally, we note that Bruce has *not* prevailed on his arguments and, thus, sanctions are not appropriate.

¶ 69    In summary, the trial court did not err in declining to impose sanctions.

¶ 70                                III. CONCLUSION

¶ 71    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 72    Affirmed.