2025 IL App (1st) 240039

No. 1-24-0039

Opinion filed June 27, 2025

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KENNETH ROSENBAUM, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant and Cross-Appellee, | ) ) | |
| v. | ) ) | No. 22 L 008330 |
| STEVEN SAMLER, LEAH SAMLER, ELI SAMLER, and JESSE SAMLER, | ) ) ) | |
| Defendants-Appellees and Cross-Appellants. | ) ) ) ) | The Honorable Patrick J. Sherlock, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    After Ruth Samler passed away at 103 years old, her son, Steven Samler, discovered she had amended her trust to name her financial advisor and friend, Kenneth Rosenbaum, as a contingent beneficiary, reducing the interests of her three grandchildren, Leah Samler, Eli Samler, and Jesse Samler. The Samlers, through their attorneys, threatened to sue Rosenbaum and his employer if Rosenbaum did not relinquish his interest, and then they filed a declaratory judgment complaint, claiming undue influence. The circuit court granted Rosenbaum summary judgment.

¶ 2        In the meantime, Rosenbaum sued the Samlers, alleging defamation, placing him in a false light, abuse of process, and malicious prosecution. The Samlers moved to dismiss and for sanctions. The trial court dismissed the case with prejudice and denied the defendants' request for sanctions.

¶ 3        On appeal, Rosenbaum argues the trial court erred in finding the Samlers were not vicariously liable for their attorneys' letters or that the litigation privilege barred his defamation and false light claims. He also contends that his second amended complaint sufficiently pleaded his claims and that the trial court should have granted him leave to file a third amended complaint. The Samlers cross-appeal the order denying sanctions.

¶ 4        We affirm. Illinois law casts a wide net when it comes to shielding attorneys and litigants under the litigation privilege. The attorneys' letters do not support a claim for defamation or false light because they were either (i) time-barred or (ii) protected by the litigation privilege. In addition, the other claims failed to state a valid cause of action and were properly dismissed with prejudice. As for the denial of the Samlers' sanctions motion, the trial court did not abuse its discretion.

¶ 5                                            Background

¶ 6        Rosenbaum is a licensed stockbroker and financial advisor. Ruth became his client after her husband died. Ruth and her husband were long-time friends of Rosenbaum's parents. Rosenbaum served as Ruth's broker for over 20 years, during which they developed a close relationship. They frequently spoke by phone, she confided in him, and he occasionally visited her. Over the years, Ruth sent him checks for his birthday and holidays. He initially cashed some checks, totaling about $1,100, but left most uncashed.

¶ 7        In 2016, when Ruth was 99 years old, she asked her estate attorney, Lewis Shapiro, to amend her trust to make Rosenbaum a contingent beneficiary. Rosenbaum claims he tried to discourage Ruth from making the bequest, but she insisted on it. Ruth also removed her son, Steven, and attorney Shapiro as successor trustees, replacing them with Rosenbaum's employer, the trust division of Oppenheimer & Co., Inc. (Oppenheimer). Under the amended trust, Steven would receive $5,000 a month for life. On his death, 35% of the trust principal would go to charities, 40% equally to her three grandchildren, Leah, Eli, and Jesse, and 25% to Rosenbaum. In December 2018, at the age of 101, Ruth amended her trust again, increasing Rosenbaum's contingent share from 25% to 40%, thereby reducing the shares of the others.

¶ 8                                    Steven's Efforts to Void the Bequest

¶ 9        In October 2020, after Ruth's death, Steven learned that his mother had amended her trust. He contacted Shapiro, her attorney, and asked whether Rosenbaum unduly influenced his mother. Shapiro wrote Steven, "I can say that as far as I know, no one influenced your mother! (except perhaps your father). And, as I told you, Ken was not a party to any of my private discussions I might have had with your Mom."

¶ 10       Steven retained attorney Michael A. Goldberg to address the matter. On December 15, 2020, Goldberg sent a letter to Oppenheimer, alleging Rosenbaum had participated in meetings with Ruth during which she decided to leave him a "tremendous bequest," exerted undue influence over her, and breached his fiduciary duties in violation of the Financial Industry Regulatory Authority (FINRA) rules. The letter demanded Rosenbaum disclaim his interest, be removed as the broker for the trust's assets, and threatened litigation if Oppenheimer did not respond within five days. Nothing in the record indicates Oppenheimer responded.

¶ 11      Steven retained new counsel. On September 17, 2021, attorney Elliot Wiczer sent a letter to Rosenbaum at his office, copying Marc R. Eisenberg, a securities attorney Steven had retained. The Wiczer letter alleged Rosenbaum used his position as Ruth's financial advisor to influence her to amend her trust, demanded he relinquish the contingent interest, and threatened litigation if he refused. Oppenheimer's compliance department reviewed Wiczer's letter before Rosenbaum saw it. Oppenheimer's legal department also reviewed the letter and forwarded it to FINRA, which opened an investigation. Rosenbaum contends Wiczer sent the letter to Rosenbaum at his office with the intent of alerting his employer and triggering a FINRA investigation.

¶ 12      Wiczer acknowledged later in a letter to Rosenbaum's attorney that Steven spoke with a FINRA investigator and cooperated with its investigation. Rosenbaum contends Steven reiterated his attorneys' allegations, telling the FINRA investigator that Rosenbaum unduly influenced Ruth and engaged in financial exploitation. FINRA closed its investigation without taking action, although the allegations remained on its website for several months afterward.

¶ 13      The Samlers filed a declaratory judgment complaint against Rosenbaum and Oppenheimer on January 13, 2022, to void the interest. Rosenbaum moved for summary judgment, which the trial court granted.

¶ 14                              Defamation Complaint

¶ 15      While the declaratory judgment case was pending, Rosenbaum sued Steven, Leah, Eli, and Jesse on September 15, 2022, but never served them. On January 12, 2023, Rosenbaum filed and served an amended five-count complaint, alleging (i) defamation *per se*, (ii) defamation *per quod*, (iii) false light, (iv) abuse of process, and (v) malicious prosecution.

¶ 16    Rosenbaum alleged that Steven and his children defamed him and placed him in a false light by having their attorneys send letters to Oppenheimer, which falsely claimed that Rosenbaum unduly influenced Ruth to leave him a bequest. Rosenbaum also alleged Steven Steven repeated the allegations to a FINRA investigator, further damaging his reputation. Additionally, Rosenbaum alleged that the declaratory judgment complaint amounted to an abuse of process and malicious prosecution. He sought special damages exceeding $100,000 for the attorney's fees, costs, and expenses incurred in defending the Samlers' lawsuit.

¶ 17    The Samlers moved to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). After briefing, the trial court entered a written order granting the motion under section 2-615 (*id.* § 2-615). The court dismissed Steven's children, finding the complaint failed to allege they took actions that gave rise to a viable cause of action. At most, the complaint alleged that Steven acted on their behalf by hiring an attorney, which is insufficient to support the claims against them. Additionally, the court concluded the complaint had failed to allege that Steven personally made defamatory statements. It only alleged that his attorneys sent defamatory letters, and under *Horwitz v. Holabird & Root*, 212 Ill. 2d 1 (2004), attorneys' statements cannot be imputed to a client. Further, even if Steven was liable for his attorneys' statements, they were contained in demand letters and, thus, covered by the litigation privilege.

¶ 18    The trial court addressed the deficiencies in each of Rosenbaum's five claims. Specifically, the complaint failed to allege defamatory statements with particularity or provide facts showing they were published to a specific third party, as required for defamation *per se* and false light claims. As to defamation *per quod*, the complaint failed to sufficiently allege special damages, as the attorney's fees incurred to defend against a declaratory judgment action were

not recoverable. Additionally, regarding the FINRA investigation, the complaint failed to allege facts from which the court could infer special damages. The court dismissed the abuse of process claim for failing to allege an "ulterior motive" and the malicious prosecution claim for not adequately pleading lack of probable cause or malice. The court did not address the Samlers' section 2-619 (735 ILCS 5/2-619 (West 2022)) contention that the claim concerning Goldberg's letter was time-barred.

¶ 19    Rosenbaum's second amended complaint mostly mirrored his first complaint. He attached several previously omitted exhibits, including the letters from Steven's attorneys and factual allegations to support that Wiczer's letter was published to a third party, Eisenberg, who was copied. (Steven had retained Eisenberg a few weeks before Wiczer sent his letter). The second amended complaint also alleged that Steven reiterated the content of his attorneys' letters to the president of Oppenheimer and to FINRA and included additional facts about his attorney's fees to support special damages.

¶ 20    Rosenbaum contended that the Samlers' declaratory judgment complaint comprised an abuse of process as (i) they filed it to coerce him into abandoning Ruth's bequest, despite knowing she freely amended her trust, and (ii) they wanted to embarrass him and create ill will with his employer. He asserted that personal malice motivated Steven, stemming from jealousy over Rosenbaum's career and his relationship with Ruth. As for the grandchildren, Rosenbaum noted that Leah acknowledged that the declaratory judgment complaint was a "family decision" and that the grandchildren, rather than Steven, stood to benefit from it.

¶ 21    Rosenbaum made no significant changes to his malicious prosecution allegations. He contended that the Samlers lacked probable cause to file the declaratory judgment lawsuit because Shapiro told them Rosenbaum did not influence Ruth to amend her trust. Finally,

Rosenbaum alleged that the attorney's fees and other expenses incurred in response to the Samlers' lawsuit and the FINRA investigation counted as special damages.

¶ 22    The Samlers again moved to dismiss under section 2-619.1 of the Code, arguing the same flaws as his first complaint and asking for sanctions. They argued that Rosenbaum should be sanctioned for (i) failing to research Illinois law or adequately address the binding precedent the trial court cited in its initial dismissal order and (ii) knowingly including misstatements of fact, such as claiming Steven published defamatory statements to a third party who was one of his attorneys and falsely asserting receipt of a few hundred dollars from Ruth when bank statements indicated that he cashed more than $1,000 in checks.

¶ 23    The trial court dismissed Rosenbaum's second amended complaint with prejudice under section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)). The trial court noted that this complaint "fails to overcome the shortcomings of the prior complaint" because "the additions are largely legal conclusions and not factual allegations supporting a claim." Concerning the grandchildren, other than Leah's testimony, the declaratory judgment action was a "family decision," and the new complaint provided no specific factual allegations against them. Alleging they were the real parties in interest as contingent beneficiaries of the trust was insufficient.

¶ 24    On the defamation and false light claims, the trial court observed that the litigation privilege doctrine extended to out-of-court communications between an attorney and opposing counsel in pretrial demand letters. Also, regarding the conversation between Steven and a FINRA investigator, the complaint lacked specific allegations.

¶ 25    The trial court reiterated that attorney's fees incurred in the declaratory judgment action do not constitute "special damages" for purposes of defamation *per quod* and false light claims.

And the filing of a declaratory judgment suit, even with a malicious motive, does not establish abuse of process.

¶ 26    In denying the Samlers' sanctions motion, the court concluded that the second amended complaint was not frivolous or intended to harass and that Rosenbaum arguably had a good faith basis. The court denied Rosenbaum's motion to reconsider and for leave to amend.

¶ 27                                    Analysis

¶ 28    Rosenbaum argues that (i) he sufficiently alleged defamation *per se* and *per quod* as well as false light against the Samlers based on the attorneys' letters and the elder Samler's statements to the FINRA investigator and (ii) the trial court erred in finding that the litigation privilege applied. He asserts that he sufficiently pleaded malice and lack of probable cause to support a malicious prosecution claim and improper means to support an abuse of process claim. Furthermore, the trial court abused its discretion in denying him the opportunity to file a third amended complaint. The Samlers cross-appealed the denial of sanctions.

¶ 29                              Standard of Review

¶ 30    The trial court dismissed Rosenbaum's second amended complaint under section 2-615 of the Code, which tests the legal sufficiency of the complaint. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). We accept the well-pleaded factual allegations as true and dismiss only where "no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* (citing *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006)). We may affirm the judgment on any basis supported by the record, regardless of the trial court's reasoning. *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606, ¶ 11. We review *de novo* dismissal under sections 2-615 and 2-619. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10.

¶ 31                           Defamation and False Light Claims

¶ 32        To establish a defamation claim, "a plaintiff must present facts showing that the defendant

made a false statement about the plaintiff, that the defendant made an unprivileged publication

of that statement to a third party, and that this publication caused damages." *Green*, 234 Ill. 2d

at 491. A defamatory statement harms an individual's reputation by lowering their standing in

the eyes of the community or deterring the community from associating with them. *Id.*

¶ 33        Statements may be classified defamatory *per se* or *per quod*. Rosenbaum pleaded them in

the alternative. Statements considered defamatory *per se* include those accusing the plaintiff

(i) of being unable to perform or lacking integrity in performing their employment duties or

(ii) lacking ability or otherwise prejudicing that person in their profession. *Id.* at 491-92.

Statements falling within these categories "so obviously and materially harm[ ] *** the

plaintiff" that damages are presumed. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d

77, 87 (1996). As a result, a defamation *per se* claim requires "a heightened level of precision

and particularity." *Green*, 234 Ill. 2d at 495.

¶ 34        Statements considered defamatory *per quod* cause reputational injury but do not fall within

a defamation *per se* category. *Bryson*, 174 Ill. 2d at 103. Prejudice is not presumed, and the

plaintiff must plead special damages. *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st)

093386, ¶ 32.

¶ 35        Rosenbaum also made a false light claim, which must allege (i) being placed in a false light

before the public due to the defendant's actions, (ii) the false light would be highly offensive

to a reasonable person, and (iii) the defendant acted with actual malice, that is, with knowledge

the statements were false or with reckless disregard for their truthfulness. *Kainrath v. Grider*,

2018 IL App (1st) 172270, ¶ 50. When a false light claim arises from statements not

defamatory *per se*, a plaintiff must allege special damages. *Rivera v. Allstate Insurance Co.*, 2021 IL App (1st) 200735, ¶ 28.

¶ 36                                    Statute of Limitations

¶ 37        Before considering the defamation and false light claims, we address whether the statute of limitations bars those claims, as the Samlers argued in their motion to dismiss. Although the trial court did not address this issue, we can affirm on any basis supported by the record. *Chang Hyun Moon*, 2015 IL App (1st) 143606, ¶ 11.

¶ 38        Section 13-201 of the Code requires the filing of a defamation or false light cause of action within one year of accrual. See 735 ILCS 5/13-201 (West 2022). Defamation accrues on the publication date of an allegedly defamatory statement. *Ciolino v. Simon*, 2021 IL 126024, ¶ 19. "Any act by which defamatory matter is communicated to someone other than the person defamed is a publication." *Missner v. Clifford*, 393 Ill. App. 3d 751, 763 (2009). Also, " '[a]ll persons who cause or participate in the publication of [defamatory] matters are responsible for such publication.' " *Van Horne v. Muller*, 185 Ill. 2d 299, 308 (1998) (quoting 33A Ill. L. and Prac. *Slander and Libel* § 83, at 89 (1970)).

¶ 39        To the extent that Rosenbaum's defamation and false light claims rely on statements in the Goldberg letter, they are time-barred. The letter was "communicated to someone other than the person defamed," namely, Oppenheimer, Rosenbaum's employer. Goldberg's letter is dated December 15, 2020, more than a year before Rosenbaum filed and served his first amended complaint. Thus, claims based on that letter are time-barred.

¶ 40        As to the Wiczer letter, the Samlers contend that although Rosenbaum filed his amended complaint within one year, the single publication rule time-bars this claim as well. Under the single publication rule, the statute of limitations on a tort claim commences when the

communication containing the challenged statements is first published; it does not restart by later distributions of the original communication. *Blair v. Nevada Landing Partnership, RBG, LP*, 369 Ill. App. 3d 318, 324-25 (2006). A republication can constitute a new cause of action in the event the publication is altered to reach a new audience. *Id.* at 325.

¶ 41    The Samlers assert that if, as Rosenbaum contends, the Wiczer letter effectively reproduces the Goldberg letter, then under the single publication rule, both letters are time-barred.

¶ 42    Rosenbaum argues his claims are not time-barred under the continuing tort doctrine. Under that doctrine, when a tort "involves continuous or repeated injurious behavior, *** the limitations period is held in abeyance and the plaintiff's cause of action does not accrue until the date the final injury occurs or the tortuous acts cease." *Taylor v. Board of Education of Chicago*, 2014 IL App (1st) 123744, ¶ 46. Rosenbaum asserts his cause of action did not accrue until Wiczer sent his letter.

¶ 43    Rosenbaum cites no cases applying the continuing tort doctrine to a defamation claim and the cases he relies on found the doctrine inapplicable. Regardless, we do not apply either the single publication rule or the continuing tort doctrine. The attorneys' letters form separate allegedly defamatory statements by different attorneys with different (albeit similar) content to different parties. The Goldberg letter was sent to Oppenheimer; the Wiczer letter was sent to Rosenbaum. Only Goldberg's letter is time-barred.

¶ 44                    Defamation and False Light Claims

¶ 45    Rosenbaum asserts the trial court erred in (i) dismissing Steven's children, (ii) holding that the Samlers are not accountable for their attorneys' statements, and (iii) applying the litigation privilege.

¶ 46                    Ruth's Grandchildren

¶ 47    The trial court dismissed Ruth's grandchildren, finding that the second amended complaint did not specifically allege they defamed Rosenbaum. The complaint alleges that "Leah, Eli, and Jesse all acted in concert with Steven, for their joint and mutual benefit" and are "necessary parties" to the declaratory judgment action because they, and not their father, would be harmed by the residual bequest to Rosenbaum. We need not address whether these allegations state a claim because, apart from reiterating the language from his second amended complaint, Rosenbaum's brief does not set forth a basis for reversing. Thus, he has waived the issue. Illinois Supreme Court Rule 341(h)(7) (eff. Oct 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 48                        Vicarious Liability for Attorney Misconduct

¶ 49    Our supreme court has held that when attorneys exercise independent professional judgment, they act presumptively as independent contractors and their intentional misconduct may generally not be imputed to a client, subject to factual exceptions. *Horwitz*, 212 Ill. 2d at 12. "Accordingly, where a plaintiff seeks to hold a client vicariously liable for the attorney's allegedly intentional tortious conduct, a plaintiff must prove facts demonstrating either that the client specifically directed, controlled, or authorized the attorney's precise method of performing the work or that the client subsequently ratified acts performed in the exercise of the attorney's independent judgment." *Id.* at 13-14. No vicarious liability attaches unless the evidence shows "the client directed, controlled, authorized, or ratified the attorney's allegedly tortious conduct." *Id.* at 14.

¶ 50    Rosenbaum acknowledges *Horowitz* but contends the trial court prematurely determined Steven's attorneys were independent contractors. We disagree because Rosenbaum's second amended complaint lacks facts demonstrating that Steven "directed, controlled, authorized, or

ratified" Wiczer's specific method of performing work, which is necessary to establish vicarious liability. While Rosenbaum alleges Wiczer sent his letter "ostensibly" on Steven's behalf, this falls short of alleging Steven directed or controlled Wiczer or his actions.

¶ 51                                Litigation Privilege

¶ 52        Even attributing Wiczer's statements to Steven, the litigation privilege applies.

¶ 53        Illinois's attorney litigation privilege draws on section 586 of the Restatement (Second) of Torts: "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977). The protection also extends to the parties in the litigation. *Id.* § 587.

¶ 54        This privilege gives attorneys "the utmost freedom in their efforts to secure justice for their clients." (Internal quotation marks omitted.) *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000). It also allows attorneys to communicate fully and fearlessly with their clients (*Popp v. O'Neil*, 313 Ill. App. 3d 638, 642-43 (2000)), thereby facilitating the free flow of truthful information to the courts (*Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 165-66 (2003)). In considering the privilege, we must determine whether limiting the privilege's application would impede an attorney's ability to settle or resolve cases without resorting to costly litigation, as many disputes are best settled. See *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 833 (2006).

¶ 55        The privilege applies to communications before, during, and after litigation that pertain "to proposed or pending litigation." *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶¶ 25-26. Illinois law has expanded the privilege beyond protecting communications to

include the attorney's conduct as long as it serves the representation of a client. See *Scarpelli v. McDermott Will & Emery, LLP*, 2018 IL App (1st) 170874, ¶ 25; *Atkinson*, 369 Ill. App. 3d at 832 (examples of extension of privilege).

¶ 56    The key criterion is the "pertinency requirement." *Scarpelli*, 2018 IL App (1st) 170874, ¶ 19. Pertinency "relates to the litigation and is in furtherance of representation." *Id.* The requirement is not strictly applied; doubt typically favors a finding that a communication is pertinent. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25. Communication need not address the specific issues in the litigation. *Bedin v. Northwestern Memorial Hospital*, 2021 IL App (1st) 190723, ¶ 40 (citing *Malevitis v. Friedman*, 323 Ill. App. 3d 1129, 1131 (2001)). A communication with a third party can be protected under the litigation privilege if the third party has an interest in the litigation. See *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶¶ 22-23 (citing *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 29). Conversely, the privilege may not apply when a third-party communication is unrelated to the case. *Kurczaba*, 318 Ill. App. 3d at 705.

¶ 57    The privilege protects the Wiczer letter. It (i) was sent to Rosenbaum (who contends Oppenheimer read it) and the litigation named both as defendants, (ii) demanded that Rosenbaum relinquish his interest, and (iii) threatened legal action if he refused. Therefore, the letter was "pertinent" to future litigation and furthered Wiczer's representation of the Samlers. See *Scarpelli*, 2018 IL App (1st) 170874, ¶ 19 (if a communication "relates to the litigation and is in furtherance of representation, the privilege applies").

¶ 58    Rosenbaum contends the trial court erred in referring to Wiczer's letter as a "demand" letter, asserting (i) no lawsuit was pending when sent, (ii) the letter was not a prerequisite to

filing suit, and (iii) Wiczer sought to embarrass him and ensure Oppenheimer notified FINRA.

¶ 59     A demand letter "explains [a party's] legal position in a dispute and requests that the recipient take some action (such as paying money owed), or else risk being sued." Black's Law Dictionary (12th ed. 2024). This definition conforms with the content of Wiczer's letter, which pertained to the declaratory judgment action. Moreover, the letter did not need to be classified as a demand letter. See *Scarpelli*, 2018 IL App (1st) 170874, ¶ 19 ("The only requirement for the application of the attorney litigation privilege is that the communication must pertain to proposed or pending litigation."). Thus, Wiczer's letter does not support claims for defamation or false light.

¶ 60     Steven contends that the other alleged defamatory statements—purportedly made to FINRA during its investigation—also fall within the litigation privilege, as FINRA is an organization performing quasi-judicial functions. See *Atkinson*, 369 Ill. App. 3d at 832. (noting the privilege has been extended to statements made during and preliminary to quasi-judicial proceedings). Some courts have found that FINRA is a quasi-governmental body (*Standard Investment Chartered, Inc. v. National Ass'n of Securities Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011) (*per curiam*)). Our research uncovered no cases finding it quasi-*judicial*.

¶ 61     Nonetheless, we need not make that determination. The second amended complaint fails to adequately allege facts based on Steven's purported statements to FINRA. As noted, because a defamation *per se* claim presumes damages, the plaintiff must plead "a heightened level of precision and particularity." *Green*, 234 Ill. 2d at 495. According to the second complaint, Steven repeated the allegations in the attorneys' letters to FINRA; however, the

complaint fails to clearly and with particularity allege the defamatory words, as a defamation *per se* claim requires. *Id.*

¶ 62                                                    Special Damages

¶ 63        The second amended complaint fails to allege special damages necessary for defamation *per quod* or false light claims. What Rosenbaum characterizes as damages are the attorney's fees he incurred defending the declaratory judgment case. But our supreme court has held that "where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, he can not in a subsequent action recover, as damages, his costs and expenses in the former action." *Ritter v. Ritter*, 381 Ill. 549, 554-55 (1943); see *Tolve v. Ogden Chrysler Plymouth, Inc.*, 324 Ill. App. 3d 485, 490-91 (2001) (attorney's fees expended by automobile buyer to defend past suit did not establish damage element of fraud and Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a(c) (West 1998)) claims).

¶ 64        Rosenbaum cites two cases, *Goran v. Glieberman*, 276 Ill. App. 3d 590 (1995), and *Lucey v. Law Offices of Pretzel & Stouffer, Chtrd.*, 301 Ill. App. 3d 349 (1998), which awarded attorney's fees as recoverable damages, but both involved legal malpractice claims. Unlike here, the damages directly related to the attorney's negligent representation in another case.

¶ 65                                                   Malicious Prosecution

¶ 66        "Actions for malicious prosecution of a civil proceeding are not favored in Illinois on the ground that courts should be open to litigants for resolution of their rights without fear of prosecution for calling upon the courts to determine such rights." *Keefe v. Aluminum Co. of America*, 166 Ill. App. 3d 316, 317 (1988). "A malicious prosecution action is brought to

recover damages suffered by one against whom a suit has been filed maliciously and without probable cause." *Miller v. Rosenberg*, 196 Ill. 2d 50, 58 (2001). "To state a claim for malicious prosecution, a plaintiff must prove five elements: '(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice on the part of defendant; and (5) damages resulting to the plaintiff. *Turner v. City of Chicago*, 91 Ill. App. 3d 931, 934 (1980).' " *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 72 (2003) (quoting *Illinois Nurses Ass'n v. Board of Trustees of the University of Illinois*, 318 Ill. App. 3d 519, 533-34 (2000)). All elements must be present. *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996).

¶ 67        Rosenbaum contends the trial court erred in finding that he failed to plead malice and lack of probable cause. He asserts that he met the malice requirement by alleging Steven was jealous of his career and his close relationship with Ruth. Also, he imputes Steven's jealousy to his children because they had an interest in the outcome of the declaratory judgment case. The statement that Steven was jealous of Rosenbaum constitutes a conclusion unsupported by specific factual allegations and, thus, fails to establish that element. See *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009) (plaintiff may not rely on conclusions of law or fact unsupported by specific factual allegations).

¶ 68        As for lack of probable cause, Rosenbaum alleged that the Samlers did not know Ruth's testamentary plans and that Shapiro sent a letter to Steven stating that "as far [he knew]," no one influenced her to change her trust. From this, he alleges that the Samlers knew he had played no role in Ruth naming him a contingent beneficiary. Rosenbaum also alleges the

Samlers knew or should have known he did not cash most of the checks Ruth sent him, which counters undue influence.

¶ 69     To lack probable cause means that no set of facts " 'would lead a person of ordinary caution and prudence to believe that he [or she] had a justifiable claim against the defendant.' " See *Grundhoefer v. Sorin*, 2018 IL App (1st) 171068, ¶ 14 (quoting *Keefe*, 166 Ill. App. 3d at 317). That Shapiro was unaware of undue influence and Rosenbaum cashed some checks does not reasonably equate to a lack of probable cause.

¶ 70                                         Abuse of Process

¶ 71     Abuse of process involves the misuse of the legal process to accomplish a purpose outside the scope of the process itself. *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (2004). To plead a claim, a plaintiff must allege (i) the defendant had an ulterior purpose or motive and (ii) an act in which the legal process is misused in the regular prosecution of the proceedings. *Id.* A plaintiff satisfies the first element by pleading facts showing the defendant instituted proceedings for an improper purpose. The second element demonstrates that the defendant used the process to achieve a result beyond its intended scope. *Id.* at 165-66. Courts strictly construe the elements, as the tort of abuse of process is disfavored. *Id.* at 166.

¶ 72     Rosenbaum asserts his second amended complaint satisfied the first element, pointing to his allegations of malice in the malicious prosecution count. Specifically, he contends Steven filed the declaratory judgment complaint due to jealousy of Rosenbaum and that jealousy can be imputed to his children. As to the second element, Rosenbaum asserts that the Samlers sued to coerce him to abandon the residual gift, embarrass him, and damage his professional reputation and relationship with Oppenheimer. He contends that the Samlers joined

Oppenheimer as a defendant in bad faith because it had "no conceivable liability," and the Samlers never sought a significant monetary payment from Oppenheimer.

¶ 73    Even if we agree that jealousy was the ulterior motive, Rosenbaum failed to allege that the Samlers improperly used the legal process. As noted, a plaintiff must allege the defendant "intended to use the action to accomplish some result which could not be accomplished through the suit itself." *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 816 (1983). The declaratory judgment complaint did not deliver the relief the Samlers sought—a determination that Rosenbaum exercised undue influence over Ruth; nevertheless, it could have. Oppenheimer, as a successor trustee of Ruth's trust and the company holding all the trust assets, was a necessary party.

¶ 74                                    Motion to Amend Complaint

¶ 75    Rosenbaum argues the trial court erred in denying leave to file a third amended complaint.

¶ 76    Illinois has a liberal policy regarding amendments to pleadings, allowing parties to present their alleged cause or causes of action fully. *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 417 (2006). Litigants, however, have no absolute right to amend their complaints. *Hadley v. Ryan*, 345 Ill. App. 3d 297, 303 (2003). We review a decision to amend a pleading under an abuse of discretion standard. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992). To determine whether the trial court abused its discretion, we consider four factors: (i) whether the proposed amendment would cure a defect, (ii) prejudice or surprise to the opposing party, (iii) timeliness, and (iv) whether the amending party had opportunities to amend. *Id.* at 273.

¶ 77    Rosenbaum focuses on the first factor, arguing that his third amended complaint alleges facts showing Steven did not provide his attorneys with a copy of Shapiro's letter, which shows bad faith. These new allegations, however, do not affect the litigation privilege or establish

special damages, which precluded Rosenbaum's defamation and false light claims. Nor do they demonstrate a lack of probable cause to challenge the trust amendments or an abuse of process in filing the declaratory judgment complaint.

¶ 78    Because Rosenbaum's proposed amendments would not have cured defects, no abuse of discretion occurred.

¶ 79                                                 Sanctions

¶ 80    The Samlers cross-appealed, asking us to reverse the denial of their motion for Illinois Supreme Court Rule 137 (eff. July 1, 2013) sanctions. They allege that (i) Rosenbaum's claims were meritless and barred by longstanding principles of Illinois law, (ii) his second amended complaint contained false statements of fact, and (iii) he filed the case solely to harass them. They assert bad faith by Rosenbaum's failing to address defects the trial court identified in his first amended complaint. They argue that we should give the trial court's decision minimal deference because it did not require briefing, hold a hearing on sanctions, or provide an explanation for its denial.

¶ 81    Rule 137 aims to prevent parties from abusing the judicial process by allowing sanctions for "vexatious and harassing actions" based on unsupported allegations of fact or law. (Internal quotation marks omitted.) *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050 (1999). The moving party must show the other side made untrue and false allegations without reasonable cause. *Id.* at 1050-51. The trial court applies an objective standard to assess whether the party made a reasonable inquiry into the facts and law supporting the allegations. *Id.* at 1051.

¶ 82    When imposing sanctions, the trial court must provide a written explanation containing specific reasons. Ill. S. Ct. R. 137(d) (eff. July 1, 2013). Conversely, when denying sanctions, the rule does not require an explanation. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110,

¶ 14. Likewise, the rule does not require a trial court to require an answer to the petition or hold a hearing, and we will not read these requirements into the rule. See *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998) (Rule 137 is penal in nature and so strictly construed). "If the drafters of the rule intended to impose such a requirement, they would have done so with specific language to that effect." *Lake Environmental*, 2015 IL 118110, ¶ 14.

¶ 83    We will uphold a ruling on Rule 137 sanctions unless the trial court abused its discretion. *Dowd & Dowd*, 181 Ill. 2d at 487. Abuse of discretion occurs when no reasonable person would take the trial court's view. *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074 (1995). The trial court's decision must be "informed, based on valid reasons, and follow[ ] logically from the circumstances of the case." *Burrows*, 306 Ill. App. 3d at 1051 (citing *In re Estate of Smith*, 201 Ill. App. 3d 1005, 1009-10 (1990)). Courts consider an allegedly offending complaint at the time of its filing. *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 334 (1991).

¶ 84    Rosenbaum's second amended complaint had some of the same shortcomings as his first. Yet, he attached documents that the trial court found missing and added facts to try to state his claims properly. Although we agree with the decision to dismiss the second amended complaint with prejudice, the Samlers have not persuaded us that Rosenbaum failed to make a reasonable inquiry into the facts and law or that he filed his suit for an improper purpose.

¶ 85    The Samlers sparked this litigation by suing Rosenbaum, and he countered. Though both parties lost the case they filed, nothing in the record indicates a violation of Rule 137. Indeed, the request for sanctions appears less as a justified legal response and more as an extension of the broader animosity between the litigants. Accordingly, we will not disturb the trial court's denial of Rule 137 sanctions.

¶ 86                              Tone of Appellant's Briefs

¶ 87        Ordinarily, we would not comment on the tone of briefs, but the tone of the appellant's reply brief repeatedly falls short of the decorum we expect in appellate proceedings. We take this opportunity to remind the bar that effective advocacy rests best on respect, professionalism, and moderation.

¶ 88        Numerous passages in the reply brief include argumentative, speculative, or disparaging language directed at the opposing party and his counsel, including the use of characterizations such as "bully," "sneak," "dishonest," "desperate attempt at deflection," and "fatuous to argue." The brief also contains assertions regarding the opposing parties' intent or veracity without citation to supporting evidence, as well as statements describing factual disputes in conclusory and combative terms (*e.g.*, "not true at all," "grossly exaggerated").

¶ 89        Attorneys must diligently represent their clients (Ill. R. Pro. Conduct (2010) R. 1.3 (eff. Jan. 1, 2010) but avoid transferring a party's indignation into their briefs.

¶ 90        Another disconcerting affectation in appellant's briefs deserving mention is the overuse of emphasis. Whole paragraphs and sentences appeared in bold, a distraction for the reader that adds nothing to the substance. In addition, a host of words were underlined, including, for example, an "And" at the beginning of a sentence, "was," "not," "could," and "professional." We advise against underlining (a carryover from typewriters) and that bolding be reserved for headings. To convey emphasis effectively, stick with italics, employing it sparingly and in service of clarity.

¶ 91        Affirmed.

*Rosenbaum v. Samler*, 2025 IL App (1st) 240039

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-008330; the Hon. Patrick J. Sherlock, Judge, presiding. |
| **Attorneys for Appellant:** | Marcos Reilly, of Hinshaw & Culbertson LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ryan C. Williams, Joel D. Bertocchi, and Gregory A. Kubly, of Akerman LLP, of Chicago, for appellees. |