2026 IL App (1st) 232510-U

No. 1-23-2510

Order filed January 16, 2026

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| GERAGOS & GERAGOS, a professional corporation, and MARK J. GERAGOS, an individual, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| | ) | No. 22 L 002626 |
| v. | ) ) | |
| | ) | Honorable |
| ABIMBOLA OSUNDAIRO, an individual, OLABINJO | ) | Patrick J. Sherlock, |
| OSUNDAIRO, an individual, GLORIA SCHMIDT | ) | Judge, Presiding. |
| RODRIGUEZ, an individual, JORGE RODRIGUEZ, an | ) | |
| individual, GREGORY KULIS, an individual, JAMES D. | ) | |
| TUNICK, an individual, THE GLORIA LAW GROUP, a | ) | |
| law corporation, GREGORY E. KULIS & ASSOCIATES, | ) | |
| a law corporation, and LAW OFFICE OF JAMES D. | ) | |
| TUNICK, a law corporation, | ) ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Mikva and Tailor concurred in the judgment.

**ORDER**

¶ 1 *Held*:   We affirm the dismissal of plaintiffs' first amended complaint where it failed to set forth the special injury/damages element of malicious prosecution. We also find that the circuit court did not abuse its discretion in denying plaintiffs' motion to vacate/leave to file an amended complaint because it was not an abuse of discretion where plaintiffs' failed to meet the standards for reconsideration, attempted to raise a new theory of the case, and plaintiffs failed to attach a proposed amended complaint for consideration.

¶ 2 Plaintiffs Geragos & Geragos, a professional corporation (Geragos Firm), and Mark Geragos, an individual (Geragos) (collectively plaintiffs) appeal from an order of the circuit court of Cook County dismissing their first amended complaint with prejudice. On appeal, plaintiffs contend that: (1) its first amended complaint sufficiently alleged malice and special damages to support a claim of malicious prosecution, and (2) the circuit court abused its discretion in denying plaintiffs' motion to vacate the dismissal because the newly discovered evidence, which the court found was obtained with due diligence, was additional, noncumulative support for plaintiffs' allegations of malice and special damages and would probably have changed the court's ruling. For the following reasons, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4                                 A. Nature of the Case

¶ 5  The factual background of this case is taken from the circuit court's June 20, 2023, written order entered on defendants' motions to dismiss.

¶ 6 On January 29, 2019, actor Jussie Smollett (Smollett) reported that unknown assailants wearing ski masks attacked him outside of his Chicago apartment at approximately 2 a.m. On February 13, 2019, the Chicago police arrested two brothers, Olabinjo and Abimbola Osundairo (collectively the brothers), based on "overwhelming evidence" that the brothers attacked Smollett. While the brothers initially denied involvement in the Smollett attack, after being in police custody

for a while, they admitted their involvement but claimed that it was part of a hoax orchestrated by Smollett. Based on those statements, the brothers were released without being charged. Smollett was subsequently charged on February 20, 2019, with 16 counts of disorderly conduct in the circuit court of Cook County for allegedly filing a false police report. Smollett hired plaintiffs to represent him in the criminal case. On March 26, 2019, the circuit court dismissed all charges against Smollett on motion by the Cook County State's Attorney.

¶ 7 On April 23, 2019, the brothers, represented by defendants Gloria Schmidt Rodriguez and Jorge Rodriguez of The Gloria Law Group (Rodriguez Firm), Gregory Kulis of Gregory E. Kulis & Associates (Kulis Firm), and James D. Tunick of the Law Offices of James D. Tunick (Tunick Firm), filed a federal lawsuit against plaintiffs. The federal suit alleged that Geragos made false and defamatory statements about the brothers on an episode of his podcast, "Reasonable Doubt." Specific statements credited to Geragos in the complaint did not appear in the transcript of the podcast. The same day as the filing of the federal defamation suit, the brothers' attorneys held a press conference where the allegations were repeated. The press conference had national media coverage.

¶ 8 Plaintiffs filed a motion in the federal defamation case to dismiss and for Rule 11 sanctions. On March 17, 2020, the federal court dismissed all claims against plaintiffs finding that Geragos made no statements during the podcast that could reasonably be interpreted as being implicated by the allegations in the complaint. The defamation and false light claims against Geragos were dismissed as was the unrecognized claim against the Geragos Firm for *respondeat superior*. Claims pending against another party, Tina Glandian, were not dismissed and that case remained pending.

¶ 9 Plaintiffs alleged that after being dismissed from the case, Schmidt Rodriguis continued to assert that Geragos was not dismissed entirely from the case through social media posts and press statements. Plaintiffs contended that the lawsuit and continued efforts to mislead the public were to capitalize on the notoriety of the incident, monetize opportunities for the brothers through media attention, and to draw media attention to the defendant lawyers and their firms.

¶ 10    Plaintiffs also alleged that they were damaged; specifically, plaintiffs alleged that the negative publicity surrounding the federal suit caused them reputational harm. Additionally, plaintiffs alleged special injuries that through the lawsuit, defendants silenced Geragos from speaking about the Smollett case on his podcast. Further, plaintiffs alleged that due to the lawsuit, they did not represent Smollett in the subsequent criminal proceedings and civil proceedings pursuant to Illinois Supreme Court Rule 707 (eff. Feb. 1, 2018)[1] which resulted in a loss of revenue.

¶ 11                           B. Procedural History

¶ 12    Plaintiffs filed their initial single-count complaint for malicious prosecution on March 17, 2022. On October 17, 2022, Tunick and the Tunick Firm filed a section 2-615 (735 ILCS 5/2-615 (West 2022)) motion to dismiss the case with prejudice. The remaining defendants filed similar motions on October 18 and 19, 2022. The circuit court partially granted the motions and dismissed plaintiffs' complaint without prejudice and granted them leave to replead.

¶ 13    On March 9, 2023, plaintiffs filed their first amended complaint in which they extensively supplemented their allegations of malice and special damages. Defendants subsequently filed

---

[1] Supreme Court Rule 707 grants permission for an out-of-state attorney to provide legal services in proceedings in Illinois.

section 2-615 motions to dismiss with prejudice on March 30, 31 and April 11, 2023. Plaintiffs filed responses to the defendants' motions to dismiss and also filed a motion to strike the factual allegations and exhibits of the brothers' motion; a motion to strike portions of Tunick's motion and to dismiss Kulis' untimely motion in its entirety.

¶ 14    On May 18, 2023, the circuit court partially denied plaintiffs' motion to strike the Kulis motion and continued the hearings on plaintiffs' remaining motions to strike until the hearing on the motions to dismiss that was set for June 14, 2023. Following oral arguments, the circuit court issued its written order on June 20, 2023.

¶ 15    The circuit court noted that the threshold in sustaining a malicious prosecution case is high and that such cases are disfavored. The court focused its analysis on the malice and special injury/damage requirements of a malicious prosecution case.

¶ 16    With respect to special injury/damages, the court noted that the first amended complaint alleged that (1) plaintiffs suffered reputational damages as a result of the lawsuit and related press conferences addressing the lawsuit; (2) the lawsuit had a chilling effect on Geragos' right of free speech and kept him from freely engaging in the business of disseminating information regarding high-profile lawsuits; and (3) defendants' lawsuit interfered with plaintiffs' ability to represent Smollett in subsequent civil and criminal proceedings in Chicago area courts and Geragos' colleague, Glandian, stepped aside as lead counsel and did not charge a fee for certain aspects of her representation of Smollett. The court found that none of the claimed injuries constituted the type of special injury sufficient to warrant proceeding to trial on the claim for malicious prosecution because, citing *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 817 (1983), special injury is injury "beyond the anxiety, loss of time, attorney fees, and necessity for defending one's

reputation, which are an unfortunate incident of many (if not most) lawsuits." The court noted that both reputational damages and chilling effect damages were not special damages under Illinois law. Regarding the loss of Smollett reputation, the circuit court found that deciding not to represent Smollett as lead counsel in his subsequent cases was a business decision that did not constitute special injury. The court pointed out that Geragos did not allege that Smollett would have hired him but for the filing of the federal defamation lawsuit, nor could he because his firm, through Glandian, continued to represent Smollett throughout his criminal prosecution. Thus, the court concluded that plaintiffs failed to satisfy the special injury/damage requirement.

¶ 17    Turning to the malice element, the circuit court found that plaintiffs alleged no facts to support malice against Tunick or Kulis or their law firms, and that plaintiffs' first amended complaint asked the court to draw unreasonable inferences to support their claim against Tunick and Kulis, which it declined to do. The circuit court therefore granted the motions to dismiss.

¶ 18    Plaintiffs filed a motion to vacate judgment on July 20, 2023, and sought leave to file a second amended complaint. In support of their motion, plaintiffs alleged that on June 16, 2023, just days before the circuit court granted the motions to dismiss, they received a "voluminous" production of documents that would support additional allegations of malice and special damages in the malicious prosecution case. Noting that the court had originally intended to issue its ruling on June 28, 2023, plaintiffs stated that they intended to file a motion to continue on that date in order to prepare and file a second amended complaint. However, because the court issued its ruling earlier, plaintiffs were unable to present the newly discovered documents to the court prior to issuance of that order. Specifically, plaintiffs asserted that the documents, produced by defendants' public relations firm, provided additional support for allegations that the federal defamation

lawsuit filed against plaintiffs was intended as a vehicle for generating media attention, which would support plaintiffs' claim of special damages.

¶ 19    On November 30, 2023, the circuit court issued a written order in response to plaintiffs' motion to vacate. After reviewing the additional documents, the circuit court concluded that they were insufficient to support a malicious prosecution claim because they did not conclusively demonstrate actual malice by Tunick or Kulis. Further, even assuming *arguendo* that malice could be inferred as to those defendants, the court would still find that the newly offered evidence did not support any allegation of special injury/damages such that the result would be different. The court further noted that plaintiffs failed to attach a proposed second amended complaint to their motion, which presented it with a further basis to deny the motion. The court, citing *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 14, noted that a plaintiff has no statutory right to amend a complaint after final judgment and a court does not commit error by denying such motion for leave to amend. The circuit court denied plaintiff's motion to vacate and plaintiffs filed their notice of appeal on December 29, 2023.

¶ 20                                ANALYSIS

¶ 21    On appeal, plaintiffs contend that: (1) their first amended complaint sufficiently alleged malice and special damages to support a claim of malicious prosecution, and (2) the circuit court abused its discretion in denying plaintiffs' motion to vacate the dismissal because the newly discovered evidence, which the court found was obtained with due diligence, was additional, noncumulative support for plaintiffs' allegations of malice and special damages and would probably have changed the court's ruling.

¶ 22                        A. Section 2-615 Dismissal

¶ 23                                    1. Standard of Review

¶ 24    The circuit court's decision to grant a section 2-615 (735 ILCS 5/2-615 (West 2022)) motion to dismiss is subject to *de novo* review. *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 14. The question is whether the allegations in the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Id.* The factually sufficient allegations contained in the plaintiff's complaint must be taken as true. *Thomas v. Hileman*, 333 Ill. App. 3d 132, 136 (2002). A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint by claiming defects exist on the face of the complaint. *Vogt*, 2020 IL App (4th) 190294, ¶ 14. In considering a section 2-615 motion to dismiss, the court may not consider affidavits, products of discovery, documentary evidence not incorporated into the pleadings as exhibits, or other evidentiary materials. *Id.* This court will affirm the dismissal based only on the pleadings where we find that no set of facts can be proven which would entitle the plaintiff to the relief sought. *Id.* Additionally, we may affirm the judgment on any basis supported by the record, regardless of the circuit court's reasoning. *Rosenbaum v. Samler*, 2025 IL App (1st) 240039, ¶ 30.

¶ 25    We further note that plaintiffs' first amended complaint was dismissed with prejudice. Section 2-612(a) of the Code of Civil Procedure (Code) authorizes the court to permit amendments where the pleadings fail to sufficiently define the issues before the court. 735 ILCS 5/2-612(a) (West 2022). That section further provides that no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet. 735 ILCS 5/2-612(b) (West 2022). In determining whether it is appropriate to allow the plaintiff an opportunity to amend the complaint, the court must

consider whether (1) the proposed amendment would cure the defective pleading, (2) the other parties would be prejudiced or surprised by the proposed amended complaint, (3) the plaintiff had previous opportunities to amend the complaint, and (4) the proposed amendment is timely. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). We review the circuit court's decision to dismiss a complaint with prejudice for an abuse of discretion. *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1046 (2009).

¶ 26    We now turn to the merits of plaintiffs' appeal.

¶ 27                                    2. Malicious Prosecution

¶ 28    First, plaintiffs contend that the first amended complaint sufficiently established the elements of malice and special injury/damages to sustain a malicious prosecution cause of action.

¶ 29     An action for malicious prosecution is disfavored in Illinois (*Thomas v. Hileman*, 333 Ill. App. 3d 132, 136 (2002)) on the ground that courts should be open to litigants for resolution of their rights without fear of prosecution for calling upon the courts to determine such rights (*Rosenbaum*, 2025 IL App (1st) 240039, ¶ 66)). A malicious prosecution action is brought to recover damages suffered by one against whom a suit has been filed maliciously and without probable cause. *Grundhoefer v. Sorin*, 2018 IL App (1st) 171068, ¶ 13. To establish a claim for malicious prosecution, a party must allege facts showing (1) the commencement or continuation of an original civil or criminal proceeding, (2) termination of the proceeding in her favor, (3) absence of probable cause for the proceeding, (4) presence of malice, and (5) damages resulting to him or her. *Id*. All elements must be present. *Rosenbaum*, 2025 IL App (1st) 240039, ¶ 66.

¶ 30    In the present case, the circuit court found that plaintiffs failed to plead sufficient facts to establish malice or a special injury/damage as a result of the federal defamation lawsuit. We agree

with the circuit court that plaintiffs adequately alleged that defendants commenced the federal defamation proceedings, that the proceedings were terminated in their favor, and that there was an absence of probable cause for such proceedings. However, we find that, after reviewing the first amended complaint, plaintiffs failed to adequately plead the facts necessary to establish the presence special injury/damage. Accordingly, we need not address whether plaintiffs' first amended complaint sufficiently pleads malice because all elements of malicious prosecution must be established in order for the suit to go forward.

¶ 31    Illinois jurisprudence has long required a "special injury" element to state a cause of action for malicious prosecution. *Thomas*, 333 Ill. App. 3d at 136. "Special injury" has been defined as "injury not necessarily resulting in any and all suits prosecuted to recover for like causes of action." [Citations.] *Independence Plus*, 2012 IL App (1st) 111877, ¶ 18. In nearly all cases where Illinois courts have found a special injury to support a malicious prosecution suit, the nature of the underlying suit caused plaintiff some quantifiable damage-causing characteristic. *Thomas*, 333 Ill. App. 3d at 138. In considering whether litigation is rendered ordinary or injuries are special, the court's focus must properly rest on the peculiar effect of the suit together with the remedy sought and not upon the subjective effect that the suit may have had on the plaintiff. *Id.* Special damages are those beyond the usual expenses, time or annoyance in defendant a lawsuit. *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 272 (1997). Special damages are not implied but must be proved. *Schwartz v. Schwartz*, 366 Ill. 247, 252 (1937).

¶ 32    Illinois is a fact-pleading jurisdiction rather than a notice-pleading jurisdiction. *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 696 (2004). Under Illinois' standard, the pleader is required to set out ultimate facts that support his or her cause of action; notice pleading,

conclusions of law and conclusions of fact are insufficient. *Id.* While we construe the allegations in the light most favorable to the plaintiff, we cannot rely on conclusions of law or factual conclusions which are unsupported by allegations of specific facts to establish the elements of a cause of action for malicious prosecution. *Vincent v. Williams*, 279 Ill. App. 3d 1, 5 (1996).

¶ 33    In the present case, plaintiffs made the following allegations of special injury/damages from defendants' federal defamation case in the first amended complaint:

(1) substantial expenses in defending themselves in this "frivolous out-of-state court action" including meeting the deductible for their insurance policy and the matter was reported on the "loss run," which resulted in inflated malpractice premiums for the firm;

(2) reputational damages as a direct result of defendants' federal defamation case and accompanying press conference and false statements;

(3) intentionally silencing Geragos from speaking out on his podcast about Smollett case which had the effect of chilling Geragos' free speech on the Smollett matter despite it being a very high-profile legal case and none of his prior statements were defamatory; this chilling effect had the practical effect of keeping Geragos from fully and freely engaging in his business of disseminating information regarding high-profile lawsuits;

(4) interference and undermining of plaintiffs' representation of Smollett because plaintiffs forwent continued representation of Smollett at great financial cost to plaintiffs;

(5) plaintiffs would have charged Smollett $1 million for representation as lead counsel, and Smollett would have agreed; however, Geragos declined to serve as lead counsel

of record as a direct result of the federal defamation lawsuit and did not serve as counsel of record in the second criminal prosecution;

(6) Glandian, a member of the Geragos Firm, also took a lesser role in Smollett's case and because of that limited role, the Geragos Firm did not charge Smollett for Glandian's continued representation of him during the second criminal proceedings; and

(7) plaintiffs did not enter an appearance in the civil proceedings against Smollett due to the federal defamation case and thereby forwent those additional fees for representation of Smollett.

¶ 34 We have examined these allegations of special damages and find them insufficient to support plaintiffs' claim of malicious prosecution.

¶ 35 Plaintiffs' first two allegations of special damages, related to substantial litigation expenses for the out-of-state case, inflated malpractice premiums, and damage to their professional reputation, are generally not considered to be special damages in Illinois. Plaintiffs did not allege any facts regarding what extraordinary costs were related to defending the federal defamation suit nor did plaintiffs allege how their malpractice insurance premiums were inflated, which amounts to conclusory statements unsupported by factual allegations. These types of damages have been found not to be special damages but rather are incidental to defamation suits and would not represent damages suffered by these plaintiffs that would not also be a result of any litigation prosecuted to recover for similar causes of action. See *Balthazar v. Dowling*, 65 Ill. App. 3d 824, (1978).

¶ 36 When the underlying lawsuit in a malicious prosecution claim is a civil proceeding, common law requires that the plaintiff plead and prove some special injury "beyond the anxiety,

loss of time, attorney fees, and necessity for defending one's reputation, which are an unfortunate incident of many (if not most) lawsuits." [Citation.] *Grundhoefer*, 2018 IL App (1st) 171068, ¶ 17. As noted by the circuit court, this requirement is based on the premise that "the courts are open to every citizen to claim what he deems to be his right without fear of being prosecuted for heavy damages." [Citations.] *Id*. However, the societal interest in permitting the honest assertion of rights in our court rooms must be balanced against the societal interest in preventing harassment through lawsuits. *Independence Plus, Inc. v. Walter*, 2012 IL App (1st) 111877, ¶ 19. The allegations regarding litigation expenses and damage to professional reputation contained in plaintiffs' first amended complaint are insufficient to create a factual basis for the special injury/damages required as an element of malicious prosecution.

¶ 37    Next, plaintiffs' third, fifth and seventh allegations of special injury/damages were conclusory allegations without factual support. Plaintiffs' third allegation stated that the federal defamation suit had the chilling effect of silencing him, limited his free speech and kept from fully and freely engaging in his podcast business. We disagree.

¶ 38    Although plaintiffs alleged loss of free speech and that their first amendment rights were chilled, they raised no factual allegation that defendants sought any type of injunction that barred Geragos from speaking on his podcast such that plaintiffs' right to free speech was denied. See *Thomas*, 333 Ill. App. 3d at 139 (citing *Levin v. King*, 271 Ill. App. 3d 728, 733-34 (1995)). Plaintiffs' allegations related to the loss of speculative future attorney fees from Smollett are conclusory at best; as the circuit court noted, plaintiffs made no factual allegations that Smollett was going to engage the firm for future cases but was put off by the federal defamation case or that Smollett had previously agreed to such future fees. Rather, plaintiffs state, in a very conclusory

fashion that it would have charged fees and Smollett would have paid them. A plaintiff in a malicious prosecution case may not rely on conclusions of law or fact unsupported by specific factual allegations. *Rosenbaum*, 2025 IL App (1st) 240039, ¶ 67 (citing *Poo-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009)). We conclude that those allegations are insufficient to establish special injury/damages sufficient to survive a section 2-615 motion.

¶ 39    Plaintiffs' fourth and sixth allegations of special damages are related to the perceived economic damages resulting from no longer representing Smollett as lead counsel in the various Illinois proceedings. As the circuit court noted, there were no factual allegations that plaintiffs were prevented from representing Smollett; rather, it was a voluntary and personal business decision by plaintiffs to step aside as lead counsel and to not charge Smollett attorney fees for their actual representation of him. To satisfy the special injury requirement, one must allege more than a voluntary decision not to act as a result of the allegedly wrongfully brought civil suit. See *Thomas*, 333 Ill. App. 3d at 139 (citing *Levin*, 271 Ill. App. 3d at 737)).

¶ 40    Here, there was no allegation that Smollett decided that plaintiffs would not continue to represent him because of the defamation lawsuit that was filed by the Osundairo brothers against them in federal court. Rather, plaintiffs specifically allege that Geragos decided not to represent Smollett, and further that he decided to temper what he said on his podcast because of the defamation lawsuit. Those admissions are dispositive because they show that it was Geragos' subjective determination not to proceed with Smollett's representation, which the court in *Levin* held could not support special damages. The circumstances that were present in *Levin* to support special damages were simply not present here. Geragos could have continued to represent Smollett and say what he wanted on his podcast regarding his client's innocence. No one moved to

- 14 -

disqualify him. Geragos' remedy here was to seek sanctions in federal court, not bring a malicious prosecution suit. See *Levin*, 271 Ill. App. 3d at 737. Therefore, the special-injury element has not been satisfied.

¶ 41    We conclude that plaintiffs' first amended complaint was properly dismissed under section 2-615 where it failed to fully satisfy all elements to raise a cause of action for malicious prosecution.

¶ 42                                B. Motion to Vacate

¶ 43    Next, plaintiffs contend that the circuit court abused its discretion in denying their motion to vacate the section 2-615 (735 ILCS 5/2-615 (West 2022)) dismissal because the newly discovered evidence, which the court found was obtained with diligence, was additional, non-cumulative support for plaintiffs' allegations of malice and special damages and would probably have changed the judgment. Plaintiffs maintain that the denial of their motion to vacate prevented them from obtaining any justice, let alone substantial justice, and it barred a trial on the merits.

¶ 44    Plaintiffs' post-judgment motion to vacate was filed pursuant to section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2022)). Section 2-1203 provides, "[i]n all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203 (West 2022).

¶ 45    A section 2-1203 motion applies to "final orders" as well as to judgments. *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009). The decision to grant or deny a section 2-1203 motion is within the sound discretion of the circuit court. *Id.* The intended purpose

of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. *Id.*

¶ 46    However, when reviewing a motion brought pursuant to section 2-1203, the reviewing court must examine not merely whether the court's order represented an abuse of discretion but rather, whether regarding that order, substantial justice is being done between the parties. *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601, ¶ 14.

¶ 47    The record reveals that in denying plaintiffs' section 2-1203 motion, the circuit court reviewed the "newly discovered evidence" that plaintiffs assert would support the elements of malice and special injury/damages and found that the evidence fell short of providing a factual or legal basis for malice and special injury. While it is true that the proffered evidence was new and provided additional information, it does not necessarily follow that it was sufficient to defeat a section 2-615 motion to dismiss. The issue is compounded by the fact that plaintiffs did not include a proposed second amended complaint with their motion when that motion essentially sought leave to file a second amended complaint based on what they considered to be newly discovered evidence that would provide additional support for their claim of malicious prosecution. Plaintiffs, however, contend the circuit court erred in finding that they were required to provide a proposed second amended complaint in support of their post-judgment motion to amend based on newly discovered evidence. We disagree.

¶ 48    Whether to allow an amendment of a complaint is a matter within the discretion of a trial court, and we review a court's denial of leave to amend under the abuse of discretion standard. *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 16. In determining whether a trial court abused its discretion by denying leave to amend, Illinois courts must determine "(1)

whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 49　Here, as noted above, plaintiffs did not file a proposed amendment with their post-judgment motion as required for consideration of the *Loyola* factors. Rather, plaintiffs attached the information they received in discovery to support its motion.

¶ 50　Contrary to plaintiffs' assertion, filing the proposed amendment is necessary for the determination of whether such amendment should be allowed based on the application of the *Loyola* factors. There is no presumption in the law that a proposed amendment will be a proper one, and it is not error to refuse leave to file an amendment which is not presented to the circuit court and where there are no means of determining whether the proposed amendment will be a proper and sufficient one. *People ex rel. Scott v. Cardet Intern., Inc.*, 24 Ill. App. 3d 740, 748 (1974). As plaintiffs did not file a proposed amendment with their motion, there was nothing for the circuit court to review in deciding whether the proposed amendment would cure the defects of the first amended complaint. The same result applies here. Due to plaintiffs' failure to include a proposed second amended complaint, we are also unable to apply the *Loyola* factors to determine whether the proposed amendment would have cured the defects of the first amended complaint. As such, we must conclude that the circuit court did not abuse its discretion in denying plaintiffs' section 2-1203 motion and leave to file a second amended complaint.

¶ 51　　　　　　　　　　　　　　　CONCLUSION

¶ 52　For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 53    Affirmed.