2025 IL App (1st) 240862-U

No. 1-24-0862

Order filed December 19, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| K D GROUP ENTERPRISES, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 L 003102 |
| | ) | |
| THE VILLAGE OF OAK PARK, TAMMIE GROSSMAN, STEVEN DRAZNER, and STEVEN CUTAIA, | ) | Honorable |
| | ) | Mary Colleen Roberts, |
| | ) | Judge, Presiding. |
| | ) | |
| Defendants-Appellees | ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Mikva and Tailor concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the circuit court's (1) dismissal of plaintiff's second amended complaint with prejudice where plaintiff was unable to state a cause of action for housing discrimination when it was a not a buyer or renter of real estate, and (2) denial of plaintiff's motion to reconsider where plaintiff attempted to raise a new legal theory that was not previously raised in the trial court.

¶ 2    Plaintiff K D Group Enterprises, LLC appeals the circuit court of Cook County's orders dismissing its housing racial discrimination case with prejudice on motion of the Village of Oak Park (Village), Tammie Grossman (Grossman), Steven Drazner (Drazner) and Steven Cutaia (Cutaia) (collectively defendants) and denying its motion to reconsider. On appeal, plaintiff contends that the circuit court erred in dismissing its third amended complaint with prejudice and in denying plaintiff's motion to reconsider. For the following reasons, we affirm.

¶ 3                                      BACKGROUND

¶ 4                                  A. Motion to Dismiss

¶ 5    The following factual background comes from the circuit court's written order granting defendants' section 2-615 (735 ILCS 5/2-615 (West 2022)) motion to dismiss plaintiff's third amended complaint.[1] Plaintiff is a minority-owned LLC in the state of Illinois. Plaintiff alleged in its third amended complaint that defendants violated its civil rights under section 3-102 of the Illinois Human Rights Act (Human Rights Act) (775 ILCS 5/3-102 (West 2022)) and the Fair Housing Act (FHA) (42 U.S.C. §§ 3601-3619 (1968)) with respect to a real estate transaction in Oak Park, Illinois.

¶ 6    In December of 2020, plaintiff purchased a residential real estate property at 1150 South Humphrey Avenue, Oak Park, Illinois (the subject property) via short sale.[2] Later, plaintiff contracted to sell the subject property. Pursuant to that sale, on July 26, 2021, plaintiff attempted

---

[1] The circuit court noted that although plaintiff styled its complaint as a "third amended complaint," the record reflects that it was only the second time plaintiff had amended its original complaint.

[2] A short sale is when a financially distressed homeowner sells their property for less than they owe on the mortgage, with the approval of the mortgage lender. https://www.investopedia.com/terms/r/real-estate-short-sale.asp

to purchase a transfer stamp from the Village's finance department. A transfer tax is imposed on the transfer of title to real estate located in the Village and a revenue stamp is issued upon the payment of the tax and other requirements being met for its issuance. A final water meter read and proof of final water bill payment is required before the Village will issue a transfer stamp pursuant to the Oak Park Village Code, sections 23A-1-1, *et seq.* The Village determined that it could not, and accordingly did not, issue the transfer stamp because plaintiff did not comply with its requirements for issuance, namely, proof of final water bill payment.[3] Nevertheless, on July 26, 2021, plaintiff sold the property, but the buyers later rescinded the purchase based on evidence of significant code violations on the property.

¶ 7     On April 1, 2022, plaintiff filed its original five-count complaint against the Village. The Village moved to dismiss the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2022)). On October 24, 2022, the circuit court partially granted the Village's motion, dismissing all but the Human Rights Act and FHA claims. On December 19, 2022, plaintiff filed an amended three-count complaint, adding Village employees Grossman, Drazner and Cutaia as defendants. Defendants moved to dismiss the amended complaint pursuant to combined motion pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)), which the circuit court granted on May 23, 2023, and also granted plaintiff leave to amend its statutory claims.

¶ 8     On June 20, 2023, plaintiff filed its two-count second amended complaint, raising claims of (1) a civil rights violation under section 3-102 of the Human Rights Act (775 ILCS 5/3-102

---

[3] During this process, the Village discovered that the subject property had a straight pipe directly connected to the Village's water supply without a water meter; thus, the Village was unable to conduct a final water meter reading.

(West 2022)), and (2) a violation of the FHA on similar grounds.[4] Plaintiff claimed that the Village violated the Human Rights Act and the FHA by changing its transfer stamp procedures and failing to provide a transfer stamp to a minority-owned business when plaintiff sought to sell the subject property. Plaintiff alleged that it was treated differently from the previous owner of the subject property, who was not a minority, and whose application for a transfer stamp was not denied by the Village nor subject to an inspection at the time of the property conveyance.

¶ 9 Defendants again moved to dismiss pursuant to sections 2-615 and 2-619(a)(9) of the Code (735 ILCS 5/2-615, 2-619(a)(9) (West 2022)). On October 10, 2023, the circuit court entered a written order granting defendants' motion to dismiss pursuant to section 2-615 because plaintiff failed to plead a cause of action and further, the court found that plaintiff was unable to plead a cause of action under the law.

¶ 10 In its ruling, the circuit court noted that, in each count of the complaint, plaintiff alleged that the Village discriminated against its business regarding a real estate transaction for the subject property under sections 3-102 and 3-101(B) of the Human Rights Act (775 ILCS 5/3-101(B), 3-102 (West 2022)) and section 3601-19 of the Civil Rights Act (42 U.S.C. §3601-19 (1968)), as well as various provisions contained in the FHA. The court indicated that, because the Human Rights Act is similar in language and intent to the FHA, pursuant to *Turner v. Human Rights Commission*, 177 Ill. App. 3d 476, 486 (1988), courts may consider judicial interpretations of the FHA in resolving issues concerning the Human Rights Act.

---

[4] We note that the allegations in plaintiff's second amended complaint contain references to both Title VII of the Civil Rights Act of 1968 (Civil Rights Act) (42 U.S.C. § 3601-19 (1968)) as well as various provisions found in the FHA, contained in Chapter 45 of Title 42- The Public Health and Welfare Act (42 U.S. C. §§ 3601, 3603, 3604, 3605, 3606 (1988)).

¶ 11    The court found that in order to allege a *prima facie* case of housing discrimination, a plaintiff must allege that: (1) the plaintiff is [part of a protected group]; (2) the plaintiff applied for and was qualified to rent or purchase the housing at issue; (3) the plaintiff was rejected; and (4) the housing opportunity remained available. In this case, the court opined that plaintiff did not properly plead the third element of a *prima facie* case, noting that plaintiff's claim rested on its allegation that the Village denied its application for a transfer stamp and demanded an inspection when plaintiff sought to sell the property to another buyer. The court further found that while plaintiff alleged that the Village did not deny the previous non-minority owner's application for a transfer stamp or demand an inspection in that prior real estate transaction and that they were similar situated transactions, neither scenario showed that the Village rejected the purchase of a house in either situation. Rather, each situation indicated that the Village made a determination about the issuance of a transfer stamp, but it played no role in the real estate transaction itself.

¶ 12    The circuit court also found that plaintiff's pleading failed because only parties who were engaged in the real estate transaction could be found liable for unlawful discrimination under the Human Rights Act and the FHA. The court stated that plaintiff could not allege, under the law, that the Village was engaged in the real estate transaction because the Village did not fall within the definition of "being engaged in a real estate transaction," citing our supreme court's decision in *People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 27, which determined what it legally meant to be engaged in a real estate transaction.

¶ 13    In this case, the circuit court found that there were no facts alleged that the Village was a party who was a necessary and direct channel through which funds flowed under the definition in *Wildermuth*. Nor were facts alleged that the Village provided loans, brokerage or appraisal

services, or any other financial assistance to plaintiff, which plaintiff acknowledged in its response to defendants' motion to dismiss. Plaintiff admitted in its response that defendants were not "mortgage brokers" nor preparers of a loan modification application in this matter like in *Wildermuth*. The court concluded that the Village's procedure on transfer stamps was not a necessary and direct channel through which funds flowed for a real estate transaction, and thus under the law, the Village was not a party to, nor was it engaged in, a real estate transaction. The court further noted that plaintiff's unfounded interpretation of the Human Rights Act that the issuance of a real estate transfer stamp made the Village a party to a real estate transaction was in direct contradiction with the language of the Human Rights Act, the FHA and the supreme court's holding in *Wildermuth*. Thus, the court concluded that the Village was entitled to dismissal of plaintiff's complaint with prejudice pursuant to the plain language of the Human Rights Act and the FHA as plaintiff was unable to state a cause of action even after amendment because the Village was never engaged in a real estate transaction with plaintiff.

¶ 14                                B. Motion to Reconsider

¶ 15     On November 8, 2023, plaintiff filed its motion to reconsider, which the circuit court denied in a written order on March 22, 2024. In its motion, plaintiff argued that the circuit court erred in its application of existing law to the facts of the case, and as an alternate argument, plaintiff offered a new legal theory in support of its motion to reconsider. Specifically, plaintiff's new theory was that the Village was in fact a broker in the real estate transaction.

¶ 16     The circuit court reviewed its prior order and rejected plaintiff's argument that the court erred in its application of existing law. The court noted that its decision was based on its finding that plaintiff's pleadings failed because only parties who were engaged in real estate transactions

could be found liable for unlawful discrimination under the Human Rights Act and the FHA. Further, under the law as found in the *Wildermuth* case, the Village was not engaged in the real estate transaction because the Village's conduct did not fall under the definition of what it meant to be engaged in a real estate transaction. Additionally, plaintiff alleged no facts that the Village was a party who was a necessary and direct channel through which funds flowed for the transaction.

¶ 17    The court also found that plaintiff presented additional argument in support of its motion claiming that the Village was engaged in the act of brokering under the statute, which the court found to be a new legal theory that was never raised previously. The circuit court therefore declined to consider that argument on the motion  to reconsider. Plaintiff's motion to reconsider also requested that the circuit court review its dismissal with prejudice. However, the court noted that plaintiff failed to present any newly discovered evidence, changes in the law or errors in its previous application of the law, thus plaintiff did not meet its burden to vacate the prior judgment. The circuit court accordingly denied plaintiff's motion to reconsider.

¶ 18    Plaintiff filed its timely notice of appeal on April 17, 2024.

¶ 19                                  ANALYSIS

¶ 20    On appeal, plaintiff contends that the circuit court erred in dismissing its [second] amended complaint with prejudice and denying plaintiff's motion to reconsider. We shall review each contention on its merits below.

¶ 21                          A. Statutory Framework

¶ 22    The Human Rights Act provides that it is a civil rights violation for a real estate owner or broker to refuse to engage in a real estate transaction, including rental of real property, because of

unlawful discrimination against a person by virtue of his race. 775 ILCS 5/1-103(Q), 3-101(B), 3-102 (West 2022). Similarly, sections 3604(a) and 3604(b) of the FHA provides that it is unlawful to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin; or to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status or national origin. 42 U.S.C. §§ 3604(a), (b) (1988).

¶ 23     As noted by the circuit court, because the Human Rights Act is similar in language and intent to the FHA, we may consider judicial interpretations of this statute to resolve the issues presented in this appeal.  This is consistent with our practice of looking to federal employment discrimination law for guidance on enforcing our own antidiscrimination statute. See *Turner*, 177 Ill. App. 3d at 486. The plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of unlawful discrimination. *Id*. at 487. If the plaintiff succeeds, the defendant must then articulate some legitimate, nondiscriminatory reason for its decision. *Id*. If the defendant carries this burden of production, the presumption of discrimination drops from the case and the plaintiff must prove by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason and is a pretext to unlawful discrimination. *Id*.

¶ 24     In order to establish a *prima facie* case of unlawful discrimination, a plaintiff is generally required to show that: (1) the plaintiff is a member of a protected group; (2) the plaintiff applied for an opportunity and was qualified for the opportunity; (3) the opportunity was denied to the plaintiff; and (4) after the opportunity was denied, the opportunity was offered to others not in the

protected group. *Id*. citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

¶ 25     With this framework in mind, we turn to the merits of plaintiff's arguments.

¶ 26                                    B. Motion to Dismiss

¶ 27     As noted, this appeal stems from the grant of defendants' motion to dismiss with prejudice pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2022). The circuit court's decision to grant a section 2-615 (735 ILCS 5/2-615 (West 2022)) motion to dismiss is subject to *de novo* review. *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 14. The question is whether the allegations in the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Id.* The factually sufficient allegations contained in the plaintiff's complaint must be taken as true. *Thomas v. Hileman*, 333 Ill. App. 3d 132, 136 (2002).

¶ 28     A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint by claiming defects exist on the face of the complaint. *Vogt*, 2020 IL App (4th) 190294, ¶ 14. In considering a section 2-615 motion to dismiss, the court may not consider affidavits, products of discovery, documentary evidence not incorporated into the pleadings as exhibits, or other evidentiary materials. *Id.* This court will affirm the dismissal based only on the pleadings where we find that no set of facts can be proven which would entitle the plaintiff to the relief sought. *Id.* Additionally, we may affirm the judgment on any basis supported by the record, regardless of the circuit court's reasoning. *Rosenbaum v. Samler*, 2025 IL App (1st) 240039, ¶ 3

¶ 29     We further note that plaintiffs' third amended complaint was dismissed with prejudice. Section 2-612(a) of the Code of Civil Procedure (Code) authorizes the court to permit amendments

where the pleadings fail to sufficiently define the issues before the court. 735 ILCS 5/2-612(a) (West 2022). That section further provides that no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet. 735 ILCS 5/2-612(b) (West 2022). In determining whether it is appropriate to allow the plaintiff an opportunity to amend the complaint, the court must consider whether (1) the proposed amendment would cure the defective pleading, (2) the other parties would be prejudiced or surprised by the proposed amended complaint, (3) the plaintiff had previous opportunities to amend the complaint, and (4) the proposed amendment is timely. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). We review the circuit court's decision to dismiss a complaint with prejudice for an abuse of discretion. *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1046 (2009).

¶ 30    Plaintiff contends that the circuit court erred in dismissing its [second] amended complaint with prejudice for various reasons. First, plaintiff argues that the circuit court offered little, if any, distinguishable discussion as to its claims under the FHA and appeared to focus all of its analysis on the Human Rights Act, when there is a key difference between the statutes, namely that the FHA is distinguishable because its definitions section does not include one dedicated to brokers or brokering. Moreover, plaintiff argues that it was rejected by the Village for purposes of pleading a *prima facie* case of housing discrimination in that the Village refused to issue a transfer stamp and the Village had no intention of issuing a transfer stamp; rather, plaintiff argues that the Village intended to keep coming back with new demands until plaintiff "threw in the towel." Plaintiff maintains that the circuit court's "embrace of a stricter definition of rejected would enable

discriminators to bypass accountability by simply including new and/or different conditions once the prospective buyer (or seller) met the current one."

¶ 31    Plaintiff also argues that the Village was engaged in a real estate transaction and contends that the scope of *Wildermuth* was limited and therefore the circuit court erroneously relied on it. Further, plaintiff contends that the Village "interjected" itself between plaintiff and the prospective buyers and communicated misinformation that resulted in the termination of the contract. Additionally, plaintiff contends that the circuit court's determination that the Village must be a necessary and direct channel to the real estate transaction in order to have liability under the Human Rights Act was in error and not applicable to this case.

¶ 32    We have reviewed plaintiff's second amended complaint, the relevant provisions of the Human Rights Act and the FHA and conclude that the complaint was properly dismissed with prejudice. Despite plaintiff's attempt to fit the circumstances of this case into the statutory framework of the Human Rights Act and the FHA, we find that plaintiff does not fall within the group protected by either of those statutes, namely buyers or renters of real estate; nor is defendant a seller of real estate.

¶ 33    The applicable sections of the Human Rights Act as noted above and cited in plaintiff's second amended complaint very plainly state that it is a civil rights violation for a real estate owner or broker to refuse to engage in a real estate transaction, including rental of real property, because of unlawful discrimination against a person by virtue of his race. See 775 ILCS 5/1-103(Q), 3-101(B), 3-102 (West 2022). Similarly, the relevant sections of the FHA make it unlawful to refuse to sell or rent to a person because of race, color, religion, sex, familial status or national origin. See 42 U.S.C. §§ 3604(a), (b) (1988). The record is very clear that plaintiff was not a purchaser or

renter of the subject property located in the Village of Oak Park; rather, plaintiff was the owner of the property seeking to sell. While the village transfer stamp is a necessary component to effectuate the sale of property in Oak Park and should be issued on a non-racially discriminatory basis, we do not find that either act contemplates governance over the ordinance of a local municipality. Thus, the fact that plaintiff was not a buyer or renter of real estate and the village was not an owner, broker, seller, or lessor is dispositive of its claim for unlawful racial discrimination in a real estate transaction.[5]

¶ 34                                    C. Motion to Reconsider

¶ 35    We now turn our attention to plaintiff's motion to reconsider. Plaintiff contends that the circuit court erred in denying its motion to reconsider although it admitted that it did not use the term "brokering" in its third amended complaint to describe the Village's role in issuance of a transfer stamp but rather first made that argument in the motion to reconsider. Plaintiff argues that "by examining the use of the term brokering and the face of [its] complaint, [it is] clear that this argument was part of [its] assertion that the Village was never going to let [him] sell that property." Plaintiff asserts that the circuit court's ruling was limited to its belief that this was a new argument and did not analyze it on the merits and asks that this court remand for a determination of whether the circuit court erred in its application of the law. We decline to do so.

¶ 36    Where a motion to reconsider is based only on the allegation that the circuit court misapplied existing law, the reviewing court applies the *de novo* standard of review. *Compton v.*

---

[5] We also note that plaintiff has not alleged that the property was in the same condition as it was when purchased with respect to the water line, which would have been a stronger case for disparate treatment. Rather, it appears that plaintiff purchased the property, did some sort of work to it and then attempted to sell it and the Village was unable to assess the final water charges due to the illegal line, which prevented it from issuing the transfer stamp to plaintiff.

*Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 330 (2008). Where the denial of a motion to reconsider is based on new matters, such as additional facts or new arguments or legal theories that were not presented during the course of the proceedings leading to the issuance of the order being challenged, the abuse of discretion standard applies. *Byer Clinic & Chiropractic, Ltd. v. State Farm Fire & Casualty Co.*, 2013 IL App (1st) 113038, ¶ 15.

¶ 37  The purpose of a motion to reconsider is to bring to a court's attention: (1) newly discovered evidence; (2) changes in the law; or (3) errors in the court's previous application of existing law. *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 280 (2009). A party forfeits legal theories and factual arguments by waiting to raise them for the first time in a motion to reconsider. *Id.*

¶ 38  Here, the record is clear that plaintiff's motion to reconsider raised a new legal theory that had not been previously argued before the circuit court and was not raised in its third amended complaint, namely that the Village acted as a broker in its role of issuing transfer stamps. In fact, plaintiff's motion to reconsider conceded that point while raising the new legal theory. It is disingenuous of plaintiff to argue before this court that the allegations raised in the third amended complaint can be construed to have raised the "brokering" argument, when it is directly contradicted by the motion to reconsider. We therefore conclude that plaintiff's brokering argument is forfeited. As such, we find that the circuit court did not abuse its discretion in denying plaintiff's motion to reconsider when it attempted to argue a new legal theory not included in the third amended complaint.

¶ 39                                    CONCLUSION

¶ 40  For the foregoing reason, the judgment of the circuit court is affirmed.

¶ 41    Affirmed.